S.T., Petitioner

v.

DEPARTMENT OF PUBLIC
WELFARE, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 15, 2008.

Decided Sept. 24, 2008.

Publication Ordered Dec. 4, 2008.

William J. Faust, II, Philadelphia, for petitioner.

Michael Angelotti, Philadelphia, for intervenor, Philadelphia Department of Human Services.

BEFORE: PELLEGRINI, Judge, and LEAVITT, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

S.T. (Petitioner) petitions for review of an order of the Department of Public Welfare, Bureau of Hearings and Appeals (Bureau) sustaining the decision of the Department of Public Welfare (Department) denying expungement of Petitioner's name from the ChildLine Registry.[1] We affirm.

The Philadelphia Department of Human Services, Children and Youth Division (C & Y) received a report of suspected child abuse as to S.P. S.P. was seven years old at the time the alleged abuse occurred. Following an investigation, C & Y determined that the report was indicated. C & Y found that Petitioner, the mother of S.P., was a perpetrator of child abuse.

Petitioner requested administrative review of the report. Following review, the Department sustained that finding that an indicated report of child abuse had been established. Petitioner then appealed to the Bureau seeking expungement on the basis that substantial evidence was not presented to support the findings. The Bureau held a hearing on this matter.

A hearing was held before an Administrative Law Judge (ALJ). At the hearing, C & Y sought to have S.P.'s oral statements admitted into evidence as S.P. was unavailable as a witness. S.P. had died as the result of injuries sustained in an auto-

---

1. ChildLine is a unit of the Department that operates a statewide toll-free system for receiving and maintaining reports of suspected child abuse, along with making referrals for investigation. 55 Pa.Code § 3490.4.

mobile accident. The ALJ determined that all the statements made by S.P. constituted inadmissible hearsay.

In support of its claim of abuse, C & Y then introduced four pictures of S.P. taken at his school. Karen Montgomery, a social worker, testified that she photographed S.P. on May 18, 2006, and that the photographs represent a fair and accurate representation of his condition at that time.

Ms. Montgomery stated that she also spoke to Petitioner. Petitioner informed her that S.P. was physically disciplined approximately once a month. He was either spanked by hand or with a belt. Petitioner claimed that her boyfriend, A.S., was usually in charge of the discipline.

Petitioner further informed her that on May 17, 2006, S.P. did not behave in school. As such, S.P. was disciplined with a belt by A.S. A.S. hit the child a number of times with the belt. Petitioner became angry that S.P. was screaming and crying. She then hit S.P. with the belt and returned the belt to A.S. so he could continue hitting S.P.

Petitioner presented the testimony of A.S.[2] He testified that S.P. had discipline problems in school, so he and Petitioner decided S.P. should be disciplined. S.P. was told to go to his room and remove his clothing, except for his underwear. A.S. then began hitting S.P. with the belt. He stated that Petitioner entered the room and hit S.P. twice with the belt. He was not sure how many times S.P. was hit.

Petitioner also testified. She stated that S.P. received a "bad note" in school. (R.R. at 35). She told S.P. that he had to be disciplined. Then, she and A.S. discussed the matter and agreed that A.S. would physically discipline the child. Petitioner claimed that A.S. took off his belt and went to the child's room. She went into the kitchen. She heard A.S. hitting the child and heard the child crying. She went to S.P.'s room and asked why he was crying. Petitioner stated that she "got beatings" when she was a child and she was not permitted to cry during the beatings. (R.R. at 36). Petitioner explained that if she cried during a beating, she was hit additional times. So in response the child's cries, she hit him twice with the belt. She then returned the belt to A.S. and "told him not too much more." (R.R. at 40).

Petitioner stated that following day she sent S.P. to school. She then received a telephone call from the school informing her that her son was in protective custody and C & Y would be coming to her home for an interview.

At the conclusion of the hearing, the ALJ determined that A.S. and Petitioner agreed to physically discipline S.P. As a result of that discipline, the ALJ further determined that S.P. suffered extensive bruising. Based on the photographic evidence, the ALJ made the following findings of fact:

14. From several inches above his belly button and extending to his genitals, red bruising covered the subject child's skin. (N.T. July 12, 2007; DHS–4).

15. On his backside, red bruising covered the subject child's body from the middle of his torso to his buttocks. (N.T. July 12, 2007; DHS–4).

16. Red bruising also covered almost the entire right side of the subject child's right thigh from hip to knee. (N.T. July 12, 2007; DHS–4).

17. Several spots on the subject child's groin and above his right knee contained

2. At the time of the hearing, Petitioner and A.S. were married.

dried blood showing where the skin was broken. (N.T. July 12, 2007; DHS–4). (R.R. 51).

The ALJ further found as follows:

In the instant case, the pictures of the subject child's injuries are powerful evidence that the subject child suffered a serious physical injury. They show bruises over much of the child's body. The picture of the extensive bruising from the child's abdomen to his groin is especially graphic. As such, the pictures depict the result of a savage beating that was far removed from any acceptable corporal punishment. In, sum the only conclusion one can draw from these photographs is that the subject child suffered serious pain and therefore a serious physical injury.

(R.R. at 52).

The ALJ further found that Petitioner fully participated in the beating. The ALJ noted that Petitioner testified that she agreed that A.S. should hit the child with the belt. As the beating progressed, she heard the child crying. She then entered the child's bedroom and hit him with the belt, because she believed it was not appropriate to cry while being disciplined. She then returned the belt to A.S. and told him to continue hitting the child.

Based on his findings, the ALJ recommended that Petitioner's request for expungement be denied. The Bureau agreed, adopting the recommendations of the ALJ in its entirety.

Petitioner now appeals to this Court.[3] Petitioner alleges that the Bureau erred in finding that C & Y presented substantial evidence that S.P. suffered severe pain.

Petitioner also argues that the evidence did not establish that she was a perpetrator of child abuse.

■■■■ The county agency has the burden of proof in an expungement case and the critical issue to be determined is whether or not the indicated report is accurate. *A.O. v. Department of Public Welfare*, 838 A.2d 35 (Pa.Cmwlth.2003). The county agency must establish by substantial evidence that the indicated report is accurate. *Bucks County Children and Youth Social Services Agency v. Department of Public Welfare*, 808 A.2d 990 (Pa. Cmwlth.2002).

An "indicated report" is defined as:

A child abuse report made pursuant to this chapter if an investigation by the county agency or the Department of Public Welfare determines that substantial evidence of the alleged abuse exists based on any of the following:

(1) Available medical evidence.

(2) The child protective service investigation.

(3) An admission of the acts of abuse by the perpetrator.

Section 6303(a) of the Child Protective Services Law (the Law), 23 Pa.C.S. § 6303(a).

Section 6303(b)(i) of the Law defines child abuse as "[a]ny recent act or failure to act by a perpetrator which causes nonaccidental serious physical injury to a child under 18 years of age." 23 Pa. C.S § 6303(b)(i), Serious physical injury is defined as "[a]n injury that: (1) causes a child severe pain; or (2) significantly impairs a child's functioning, either tempo-

---

3. Our scope of review is limited to determining whether legal error has been committed, whether constitutional rights have been violated, or whether the necessary findings of fact are supported by substantial evidence.

*K.J. v. Department of Public Welfare*, 767 A.2d 609 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 567 Pa. 750, 788 A.2d 381 (2001).

rarily or permanently." 23 Pa.C.S. § 6303(a).

■ Petitioner claims that the photographic evidence of her son's injuries does not constitute substantial evidence that he suffered severe pain. We disagree. A finding that a child has suffered severe pain does not need to be supported by witness testimony or medical evidence. *D.N. v. Department of Public Welfare,* 127 Pa.Cmwlth. 580, 562 A.2d 433 (1989). In fact, this Court has concluded that photographs alone of a child's injuries may support a finding that the injuries caused the child severe pain. *City of Philadelphia, Office of Children, Youth and Family Services v. Department of Public Welfare,* 767 A.2d 10 (Pa.Cmwlth.2001).

■ "In determining whether substantial evidence exists to support a finding of fact this Court is to give to the party in whose favor the appealed decision was rendered ... the benefit of all inferences that can logically and reasonably be drawn from the evidence." *B.J.K. v. Department of Public Welfare,* 773 A.2d 1271, 1276 (Pa.Cmwlth.2001). The photographs depict a child with bruises over much of his body. We agree with the ALJ that the extensive bruising from the child's abdomen to his groin is especially graphic. We also agree that the photograph of the child's right leg depicts cuts and dried blood. Following review of the photographs in evidence, one can reasonably infer that the injuries caused severed pain. As such, we hold that the Bureau's determination was supported by substantial evidence of record.

Petitioner also alleges that she does not meet the definition of a "perpetrator" of child abuse in that her acts or her failure to act did not cause serious injury to her child. Petitioner alleges that she had no reason to know that A.S. would spank the child to such an extent, that she only hit the child twice with the belt and that "the obvious inference to be draw from the evidence is that [she] entered the room where her son was being spanked upon hearing his cries, because she sought to diplomatically end the discipline meted out by her fiancé, by taking the belt away from her fiancé, and by suggesting that the fiancé mete out 'not too much more' punishment, which ended the spanking." (Appellant's Brief at ii).

The Pennsylvania Supreme Court has determined that the standard to be used when evaluating a perpetrator's actions in administering corporal punishment is whether or not her actions equals that of criminal negligence. *P.R. v. Department of Public Welfare, Office of Hearings and Appeals,* 569 Pa. 123, 801 A.2d 478 (2002). Criminal negligence is defined as follows:

> A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

18 Pa.C.S. § 302(b)(4).

■ Petitioner, by her own testimony, decided to abdicate her parental responsibilities regarding discipline to her boyfriend. She then also chose not to be present in the room where she knew her son was being hit with a belt. Upon hearing her son cry, she entered his room. Once in the room, Petitioner did not suggest that she made any attempt to determine whether the punishment her son was receiving was appropriate. She did not

raise any questions as to the force being used to hit the child or the location of the blows on his body. Instead, Petitioner's only concern upon entering the room was to further punish S.P. for violating her "no crying while taking a beating" rule. After hitting S.P. herself, she chose to return the belt to her boyfriend so he could continue the punishment. She then left the room, again choosing not to monitor the situation.

As such, Petitioner's acts and omissions equal a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.[4] Therefore, we cannot say that the Bureau erred in concluding that Petitioner was a "perpetrator" of abuse.

Accordingly, the order of the Bureau is affirmed.

### ORDER

AND NOW, this 24th day of September, 2008, the order of the Department of Public Welfare, Bureau of Hearings and Appeals is affirmed.

---

4. We note that A.S. was only legally authorized to physically punish S.P. based on the authority given to him by Petitioner. *See* 18 Pa.C.S. § 509(1). If Petitioner is going to provide a non-parent with the authority to physically discipline her child, she cannot purposefully choose to ignore how the discipline is being conducted and then claim ignorance of the situation. Corporal punishment is only permitted where it is "not designed to cause or known to create a substantial risk of causing death, serious bodily injury, disfigurement, extreme pain, or mental distress or degradation." 18 Pa.C.S. § 509(1)(ii). As the parent of the child, Petitioner was responsible for determining whether the punishment given to her son was permissible.