987 A.2d 681

E.D.B., an incapacitated person, by and through D.B.
& J.R.B., Jr., Court–Appointed Guardians of the
Estate and Person of E.D.B.

v.

Gerald CLAIR and Centre Community Hospital, a Corporation.

Appeal of Commonwealth of Pennsylvania,
Department of Public Welfare.

Supreme Court of Pennsylvania.

Argued May 12, 2009.

Decided Dec. 29, 2009.

Allen C. Warshaw, Department of Public Welfare, Jason William Manne, Lisa B. Dees, PA Department of Public Welfare, for Pennsylvania Department of Public Welfare.

Paul A. Hilko, Rosen Louik & Perry, P.C., Pittsburgh, for E.D.B., an Incapacitated person, through D.B. & J.R.B., Jr.

Paul K. Vey, Pittsburgh, Brian J. Bluth, McCormick Law Firm, Williamsport, for Center Community Hospital.

Michael M. Badowski, Margolis Edelstein, Camp Hill, for Gerald Clair.

Shanin Specter, Charles Lyman Becker, Kline & Specter, P.C., Philadelphia, for Amicus Curiae.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, GREENSPAN, JJ.

## *OPINION*

Justice McCAFFERY.

The issue presented in this case is whether the Pennsylvania Department of Public Welfare (hereinafter "DPW") can obtain reimbursement from a tortfeasor for Medicaid expenditures made on behalf of a disabled minor when a claim therefor by the minor's parents is barred by the statute of limitations. We conclude that DPW can obtain such reimbursement, and accordingly reverse the decision of the Superior Court.

E.D.B. (hereinafter "Emily") was born on October 11, 1985, suffering from severe physical and mental disabilities. Nearly eighteen years later, in August 2003, Emily, by and through her parents and guardians, D.B. and J.R.B., Jr. (hereinafter "the Bowmasters"), filed suit against Centre Community Hos-

pital, where Emily was born, and an attending physician, alleging that their negligence was the proximate cause of Emily's disabilities. The complaint specifically alleged, *inter alia*, that Emily "has been forced to expend sums of money for physicians, hospitals, paramedical personnel, home care attendance, medications and other items necessary for her proper care and treatment and may be forced to expend similar sums for like items in the future" and that her "earning capacity has been gravely and permanently impaired." Complaint at 8–9. The parties reached a negotiated settlement, and the Bowmasters filed a petition for leave to settle an incapacitated person's case. On August 31, 2006, the court of common pleas approved the settlement, which included the establishment of a special needs trust for Emily.[1]

Because Emily had been receiving medical assistance benefits through the Medicaid program, the Bowmasters provided notice to DPW of their suit in March 2004, as required by statute. *See* 62 P.S. § 1409(b)(5). DPW responded with a statement of claim asserting a lien on any award or settlement resolving the litigation, in the amount that DPW had expended for Emily's medical care. In the order settling the case, the court of common pleas accepted the Bowmasters' proposal that $56,517.81 (the amount ultimately sought by DPW) of the settlement be set aside, pending a determination of the exact amount necessary to satisfy DPW's lien.[2] Following further briefing on the issue of DPW's lien, the court ordered the trustee of Emily's special needs trust to reimburse DPW in the full amount of $56,517.81 for Emily's medical expenses.

The Bowmasters appealed to the Superior Court, which reversed and remanded, holding that DPW could be reimbursed *only* for those medical expenses paid on Emily's behalf

---

1. The trial court also granted Centre Community Hospital's motion to seal the record relating to the settlement. Centre Community Hospital filed a motion in this Court to seal portions of the appellate record, which we granted on April 7, 2009.

2. DPW initially determined that it had spent $86,092.53 on Emily's care, but subsequently revised this amount down to $79,193.12. The final amount that the common pleas court ordered to be set aside reflected a proportionate deduction for attorneys' fees and costs.

*after* she reached the age of majority. *Bowmaster v. Clair,* 933 A.2d 86, 91–92 (Pa.Super.2007). The Superior Court's reasoning was as follows: Under Pennsylvania common law, a claim for medical expenses incurred by a minor because of personal injury rests with the minor's parents, not with the minor herself. *See Hathi v. Krewstown Park Apartments,* 385 Pa.Super. 613, 561 A.2d 1261, 1262 (1989). However, in 2003, when the complaint was filed, the Bowmasters were legally barred from seeking reimbursement for medical expenses incurred during Emily's minority because the statute of limitations for such a suit had expired. *Bowmaster, supra* at 88–89. Although Emily could pursue a claim for medical expenses in her own right, such a claim, under common law, would necessarily be limited to expenses incurred *after* she reached the age of majority. *Id.* Thus, the Superior Court concluded, the instant litigation could *not* have resulted in an award or settlement that included the medical expenses Emily had incurred while she was a minor, and accordingly DPW could not satisfy its lien for Medicaid benefits paid during Emily's minority from the settlement.

DPW sought allowance of appeal from this Court, which we granted on the following issues, as stated by DPW:

a. Where a minor child's estate may be legally liable to pay medical expenses resulting from an injury, can the child sue the tortfeasor for reimbursement of those medical expenses?

b. Did the Pennsylvania Legislature intend to permit a minor receiving medical assistance to sue a tortfeasor for medical expenses when it enacted 62 P.S. § 1409(b)?

c. Is a minor child a "beneficiary" of medical assistance as defined in 62 P.S. § 1409(b)(13)?

*Bowmaster v. Clair,* 598 Pa. 593, 959 A.2d 900 (2008).

█ Resolution of these tightly intertwined issues is dependent upon interpretation of the Fraud and Abuse Control Act of 1980 as it intersects with the common law and federal law.[3] Statutory interpretation is a question of law, for which we

3. Act of July 10, 1980, P.L. 493, *as amended,* 62 P.S. §§ 1401–12.

must be guided by the Statutory Construction Act, 1 Pa.C.S. §§ 1901–91. *See Penn Jersey Advance, Inc. v. Grim,* 599 Pa. 534, 962 A.2d 632, 635 (2009); *Borough of Youngwood v. Pennsylvania Prevailing Wage Appeals Board,* 596 Pa. 603, 947 A.2d 724, 730 (2008). We have recently summarized the relevant principles of statutory interpretation as follows:

> The object of interpretation and construction of all statutes is to ascertain and effectuate the intent of the General Assembly. *See* 1 Pa.C.S. § 1921(a). When the words of a statute are clear and free from all ambiguity, their plain language is generally the best indication of legislative intent. A reviewing court should resort to other considerations to determine legislative intent only when the words of the statute are not explicit. 1 Pa.C.S. § 1921(b).
>
> \* \* \*
>
> Moreover, it is axiomatic that in determining legislative intent, all sections of a statute must be read together and in conjunction with each other, and construed with reference to the entire statute.

*Penn Jersey · Advance, supra* at 635–36 (internal citations omitted).

█ If possible, we must avoid a reading that would lead to a conflict between different statutes or between individual parts of a single statute. *Housing Authority of the County of Chester v. Pennsylvania State Civil Service Commission,* 556 Pa. 621, 730 A.2d 935, 946 (1999). Finally, we must presume that when enacting any statute, the General Assembly intended to favor the public interest as against any private interest. *Vitac Corporation v. Workers' Compensation Appeal Board (Rozanc),* 578 Pa.574, 854 A.2d 481, 485 (2004) (citing 1 Pa.C.S. § 1922(5)).

The statute at issue in the instant case is the Fraud and Abuse Control Act, which addresses a variety of matters relating to the Medicaid program. Medicaid, which provides joint federal and state funding of medical care for those who cannot afford to pay, requires cooperation between the states and the federal government. *See Arkansas Department of*

*Health and Human Services v. Ahlborn,* 547 U.S. 268, 275, 126 S.Ct. 1752, 164 L.Ed.2d 459 (2006); Title XIX of the Social Security Act, 42 U.S.C. § 1396–1396v. Although each state is allowed broad discretion in the development of its Medicaid program, in order to maintain federal funding a state must satisfy a number of conditions, including an obligation to seek reimbursement from third parties that are liable for a Medicaid recipient's medical expenses. *Ahlborn, supra* at 275–77, 126 S.Ct. 1752 (citing 42 U.S.C. §§ 1396a(a)(25)(A), (a)(25)(B), and (a)(25)(H), and § 1396(k)). This federal mandate led to the enactment of the Fraud and Abuse Control Act. *Shaffer–Doan v. Department of Public Welfare,* 960 A.2d 500, 506 (Pa.Cmwlth.2008) (quoting *Miller v. Lankenau Hospital,* 152 Pa.Cmwlth. 266, 618 A.2d 1197, 1198 (1992)).

DPW, the state agency that administers Medicaid, is charged with the responsibility of recovering from liable third parties the reasonable value of benefits provided under the program. 62 P.S. § 201; 62 P.S. § 1409(b)(1). A recipient of medical assistance, by the act of accepting such benefits, assigns to DPW "by operation of law [his or her] rights to recover support, specified by a court as support for the payment of medical care, and to payment for medical care from any third party." 62 P.S. § 1404(b). As set forth in the statute, "[w]hen benefits are provided or will be provided to a beneficiary under this section because of an injury for which another person is liable, or for which an insurer is liable ... **[DPW] *shall* have the right to recover from such person or insurer the reasonable value of benefits so provided.**" 62 P.S. § 1409(b)(1) (emphasis added).

The Fraud and Abuse Control Act contemplates that DPW and/or the beneficiary may initiate a suit or claim to recover medical expenses from a liable third person or insurer. At the request of DPW, the attorney general may bring such an action in the name of DPW or of the beneficiary. 62 P.S. § 1409(b)(1). When either DPW or the beneficiary brings an action or claim against a third person or insurer, then DPW or the beneficiary must give notice to the other of the action or claim. 62 P.S. § 1409(b)(5). DPW or the beneficiary may

become a party to an action brought by the other at any time before trial on the facts. 62 P.S. § 1409(b)(5)(v). However, as a general practice, DPW has sought reimbursement by asserting a lien on any judgment, award, or settlement. This practice is set forth in subsection 1409(b) of the Fraud and Abuse Control Act, which provides in relevant part as follows:

... in the event of judgment, award, or settlement in a suit or claim against such third party or insurer:

(i) If the action or claim is prosecuted by the beneficiary alone, the court [ ] shall first order paid from any judgment or award the reasonable litigation expenses.... After payment of such expenses and attorney's fees[,] the **court** [ ] **shall,** on the application of [DPW], **allow as a first lien against the amount of such judgment or award,** the amount of the **expenditures for the benefit of the beneficiary** under the medical assistance program.

62 P.S. § 1409(b)(7)(i) (emphasis added).

Another provision of the Fraud and Abuse Control Act, *see* 62 P.S. § 1409(b)(11), addresses some of the particulars for satisfaction of a DPW lien:

Except as otherwise provided in this act, **notwithstanding any other provision of law,** the **entire amount of any settlement** of the injured beneficiary's action or claim, with or without suit, **is subject to [DPW's] claim** for reimbursement of the benefits provided any lien filed pursuant thereto, but in no event shall [DPW's] claim exceed one-half of the beneficiary's recovery after deducting for attorney's fees, litigation costs, and medical expenses relating to the injury paid for by the beneficiary.

62 P.S. § 1409(b)(11) (reproduced verbatim; emphasis added).

Subsection 1409(b)(11) required some limitation and qualification after the United States Supreme Court decided *Ahlborn, supra,* in 2006. In *Ahlborn,* the high court considered an Arkansas statute that, similarly to subsection 1409(b)(11), allowed a state agency lien for Medicaid benefits to be satisfied from the *entirety* of a settlement, judgment, or award. As explained by the Supreme Court, Arkansas "claim[ed] an

entitlement to more than just that portion of a judgment or settlement that represent[ed] payment for medical expenses;" in fact, the state claimed a right to recover **all** of the funds that it had expended on a Medicaid beneficiary's behalf even if that amount exceeded the monies allocated in the settlement for medical costs. *Ahlborn,* 547 U.S. at 278–79, 126 S.Ct. 1752. Thus, under the Arkansas statute, the state's lien for Medicaid reimbursement could be satisfied in its entirety from the beneficiary's settlement with the tortfeasor, even when, to do so, those portions of the settlement allocated for other types of damages, *e.g.,* lost wages or pain and suffering, had to be diverted to the state's lien. The United States Supreme Court concluded that this provision of the Arkansas statute had "no support in the federal third-party liability provisions, and in fact squarely conflicts with the anti-lien provision of the federal Medicaid laws." [4] *Id.* at 280, 126 S.Ct. 1752. The Supreme Court accordingly held that a state's lien for Medicaid expenditures could be satisfied *only* from that portion of a settlement that represented payments for medical care. *Id.* at 282, 126 S.Ct. 1752.[5]

4. The anti-lien provision of the federal Medicaid statute to which the high court referred provides, in part, as follows:

(a) Imposition of lien against property of an individual on account of medical assistance rendered to him under a State plan[.]
(1) No lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan, except—
(A) pursuant to the judgment of a court on account of benefits incorrectly paid on behalf of such individual[.]

42 U.S.C. § 1396p (quoted in *Ahlborn, supra* at 283, 126 S.Ct. 1752).

5. Recognizing that *Ahlborn* necessitated some limitation of subsection 1409(b)(11), our General Assembly enacted Section 1409.1, effective September 2, 2008, which provides in relevant part the following:

(a) To the extent that Federal law limits the department's recovery of medical assistance reimbursement to the medical portion of a beneficiary's judgment, award or settlement in a claim against a third party, the provisions of this section shall apply.
(b) In the event of judgment, award or settlement in a suit or claim against a third party or insurer:
(1) If the action or claim is prosecuted by the beneficiary alone, the court [ ] shall first order paid from any judgment or award the reasonable litigation expenses ... together with reasonable attorney fees. After payment of the expenses and attorney fees, the **court** [ ]

There is one other provision of the Fraud and Abuse Control Act that is highly relevant to the instant case, specifically Section 1409(b)(13), which sets forth the definition of "beneficiary" for purposes of subsection 1409(b) as follows:

any person who has received benefits or will be provided benefits under this act because of any injury for which another person may be liable. It includes such beneficiary's guardian, conservator, or other personal representative, his estate or survivors.

62 P.S. § 1409(b)(13).

As discussed *supra*, in the instant case, the Superior Court determined that, the Fraud and Abuse Control Act notwithstanding, DPW was not entitled to recover its expenditures under the Medicaid program for the provision of medical care to Emily during her minority. *Bowmaster*, 933 A.2d at 91–92. The starting point for the Superior Court's holding was that, under Pennsylvania common law, only the Bowmasters—*not* Emily herself—had a cause of action for Emily's medical expenses incurred during her minority.

Under Pennsylvania [common l]aw[,] personal injury to a minor gives rise to two separate and distinct causes of action, one the parents['] claim for medical expenses and loss of the minor's services during minority, the other the minor's claim for pain and suffering and for losses after minority.

*Id.* at 88 (quoting *Hathi*, 561 A.2d at 1262); *see also Schmidt v. Kratzer*, 402 Pa. 630, 168 A.2d 585, 587 (1961) ("The minor plaintiff is entitled to damages for pain and suffering and probable loss of earnings *after he reaches his majority*[,] while his parents are entitled to damages for medical expenses they have incurred and will incur because of their son's injury and

shall allocate the judgment or award between the medical portion and other damages and shall allow [DPW] a first lien against the medical portion of the judgment or award, the amount of the expenditures for the benefit of the beneficiary under the medical assistance program.

62 P.S. § 1409.1 (emphasis added).

Notably, the General Assembly has not repealed subsection 1409(b)(11), but rather has limited its scope by enactment of Section 1409.1.

for their loss of his services *during minority.*") (emphasis in original); *Woeckner v. Erie Electric Motor Co.*, 182 Pa. 182, 37 A. 936, 936–37 (1897) (reiterating that the parent has the claim for pecuniary loss caused by injury to a minor child, based on parental duty to maintain, protect, and educate the child).

However, the Bowmasters were barred from advancing a claim in 2003 for the medical expenses Emily incurred during her minority because the statute of limitations for such a claim had expired. *Bowmaster, supra* at 89, 91. Thus, concluding that neither the Bowmasters nor Emily could recover the medical expenses she had incurred during her minority, the Superior Court held that DPW was likewise precluded from recovering such expenses.

The Superior Court rejected DPW's argument that Emily was a "beneficiary" under the Fraud and Abuse Control Act, and therefore that the agency had a statutorily-conferred right to recovery against the settlement for the reasonable value of medical benefits provided to her. *Id.* at 89–90. In rejecting this argument, the Superior Court concluded that the Bowmasters were the "true" beneficiaries under the statute because they, as parents, had an obligation to support Emily during her minority.[6] *Id.* at 91.

One year and three months after the Superior Court denied DPW the right to reimbursement in *Bowmaster,* the Commonwealth Court reached the opposite conclusion in another case that presented the same issue on similar facts. *See Shaffer–*

---

6. It is worth noting that following the Superior Court's decision in *Bowmaster,* the General Assembly enacted the following provision as an amendment to the Fraud and Abuse Control Act:

Where benefits are provided or will be provided for a minor's care, any statute of limitation or repose applicable to an action or claim in which the minor's medical expenses may be sought shall be tolled until the minor reaches the age of majority. The period of minority shall not be deemed a portion of the time period within which the action must be commenced. As used in this clause, the term "minor" shall mean any individual who has not yet attained the age of 18. Act of July 4, 2008, P.L. 557, No. 44 § 9, 62 P.S., effective as of September 2, 2008; 62 P.S. § 1409(b)(4)(iii)(D).

Although this provision post-dates and thus is not relevant to the instant case, it does make unequivocally clear the General Assembly's disagreement with the Superior Court's holding in *Bowmaster.*

*Doan*, 960 A.2d at 500. In *Shaffer–Doan*, as in *Bowmaster*, a severely injured minor, by his parents, brought a medical malpractice action after the parents were precluded from advancing their own claim because the statute of limitations had expired. *Shaffer–Doan, supra* at 503. The parties reached a settlement, but the *Shaffer–Doan* parents argued, similarly to the Bowmasters in the instant case, that DPW was not entitled to satisfy its lien from the settlement because no monies had been—or legally could be—recovered for the minor child's medical care. *Id.* at 504. The Commonwealth Court explained the essence of the *Shaffer–Doan* dispute and its relationship to *Bowmaster* as follows:

At its essence, the argument before this Court is that, since Parents failed to bring their claim within the two-year statute of limitations, DPW cannot recover the lien. This position is based on the premise that only parents can recover for a minor's medical expenses and that, since DPW's lien is for only a minor's medical expenses, DPW is precluded from recovering. [Parents] argue that because the settlement did not provide compensation for any past medical care, there should be no re-payment to DPW for past medical expenses. In support of this position, [Parents] rely on *Bowmaster, [supra]*, in which the Superior Court concluded that parents, and not the injured minor child, were the intended beneficiaries of [medical assistance] benefits from DPW for the minor child's medical expenses.

*Shaffer–Doan, supra* at 506 (internal quotation marks and citation omitted).

Following a thorough review of the relevant sections of the Fraud and Abuse Control Act and of the decisional law on which the Superior Court relied in *Bowmaster*, the Commonwealth Court declined to follow the *Bowmaster* reasoning or holding. Based on the statutory definition of "beneficiary," the Commonwealth Court strongly disagreed with the Superior Court's determination that the minor child's parents—and not the minor child—were the true beneficiaries of the medical assistance benefits received prior to the child's majority. *Shaffer–Doan, supra* at 514. In addition, the Commonwealth

Court described the prohibition against a minor receiving compensation for his or her medical expenses incurred during minority as a "common law anachronism," rooted in a now-repudiated tradition that considered children to be the property of their father. *Id.* at 511. Finally, the Commonwealth Court held that Sections 1404 and 1409 of the Fraud and Abuse Control Act superseded the common law rule insofar as necessary to allow DPW to recover medical assistance payments provided to a minor even when the claims of the minor's parents were no longer timely. *Id.* at 516–17.

After careful consideration of the incompatible—indeed opposite—holdings reached by the Superior Court and the Commonwealth Court with regard to the issue here presented, we conclude that the decision of the latter reflects the intent of the General Assembly in enacting the Fraud and Abuse Control Act. We emphasize that this case presents a question of state law requiring interpretation of the Fraud and Abuse Control Act. While the United States Supreme Court's holding in *Ahlborn* restricts the **portion** of a settlement that may be used to satisfy a state agency's lien for medical assistance payments, it does not control the central question presented here, *i.e.,* whether, under the Fraud and Abuse Control Act, DPW can obtain reimbursement for Medicaid expenditures on behalf of a disabled minor when a claim by the minor's parents is barred by the statute of limitations.

We begin our analysis with the question of whether the minor child Emily is a "beneficiary" under subsection 1409(b)(13). Based on the statutory definition's plain text, we must strongly disagree with the Superior Court's determination that the "true" beneficiaries of the medical assistance provided to Emily during her minority were her parents because they had the obligation to support her. No reading of the statutory definition of "beneficiary" can exclude Emily, as the Superior Court appears to do. A beneficiary is defined for purposes of subsection 1409(b) by the following two sentences:

**any person who has received benefits or will be provided benefits** under this act because of any injury for which another person may be liable. It **includes such *beneficia-***

ry's **guardian,** conservator, or other personal representative, his estate or survivors.

62 P.S. § 1409(b)(13) (emphasis added).

■ Thus, a beneficiary is, first and foremost, ***any* person who has received or will receive benefits** under the Fraud and Abuse Control Act. With the second sentence of the definition, the statute makes clear that **such *beneficiary's* guardian,** in this case Emily's parents, is also included in the definition of beneficiary. But the statutory inclusion of "such beneficiary's guardian" in the definition of beneficiary does not in any sense remove Emily from her status as a beneficiary in her own right. As pointed out by the Commonwealth Court in *Shaffer–Doan, supra* at 514, the statutory characterization of the guardian as the **beneficiary's** guardian makes indisputably clear that the direct recipient of the medical benefits, in the instant case Emily, is the primary beneficiary. Thus, we hold that, under subsection 1409(b) of the Fraud and Abuse Control Act, both Emily and her parents are beneficiaries, with Emily being the primary beneficiary and her parents also being beneficiaries insofar as they serve as Emily's guardians.[7]

7. We agree with the dissent that "resolution of this appeal revolves around whether either Emily's parents or Emily herself were the 'beneficiaries' of the medical assistance payments paid by DPW while Emily was a minor." Dissenting Op. at 95, 987 A.2d at 695. However, we disagree with the dissent's conclusion that only Emily's parents—and not Emily herself—were the beneficiaries of the medical assistance provided by DPW during Emily's minority. *Id.* at 76, 80–81, 987 A.2d at 683, 686–87. Our conclusion that both Emily **and** her parents were beneficiaries is based strictly and solely on the definition of "beneficiary" set forth in the Fraud and Abuse Control Act. In our view, the plain text of this statutory definition can only mean that Emily was a beneficiary as well as her parents. *See* text, *supra.*

The dissent disregards the statutory definition of "beneficiary" in an effort to effect compatibility with the common law rule that an individual has no cause of action for medical expenses incurred during his or her minority. *See* Dissenting Op. at 98–100, 987 A.2d at 697–98. The dissent specifically states that it does not agree that Emily was a beneficiary of payments from DPW in light of its prior discussion "concerning the responsibility of parents to care for their children, their legal standing to seek redress for their child's medical expenses, and the passing of the statute of limitations for those claims in this case." *Id.* at 100, 987 A.2d at 698. We do not for a moment suggest that these issues are unimportant; however, we fail to understand how

Having concluded that Emily is a beneficiary, we must read the provisions of the Fraud and Abuse Control Act with this understanding in order to resolve the dispute before us. Upon such a reading, the intent of the General Assembly becomes clear: when any beneficiary, whether an adult or a minor, enters into a settlement with his or her tortfeasor, DPW has the right to recover, via a lien asserted on the settlement, the reasonable value of Medicaid benefits provided to the beneficiary. Several provisions compel this conclusion.

Under subsection 1409(b)(1), DPW is expressly authorized to recover from a liable third party the reasonable value of benefits provided to a beneficiary. If the parties reach a settlement in a claim prosecuted by the beneficiary alone, the court is directed to allow DPW's expenditures for the benefit of the beneficiary as a first lien against the settlement. 62 P.S. § 1409(b)(7)(i). In addition, pursuant to subsection 1409(b)(9), the Commonwealth's interest in a settlement must be assured prior to the payment of any proceeds to the claimant. Finally, and importantly, under subsection 1409(b)(11), the General Assembly has expressly precluded the consideration of other provisions of law as follows:

> Except as otherwise provided in this act, *notwithstanding any other provision of law,* the entire amount of *any* **settlement of the injured beneficiary's action or claim,** with or without suit, **is subject to [DPW's] claim** for reimbursement of the benefits provided any lien filed pursuant thereto, but in no event shall [DPW's] claim exceed one-half of the beneficiary's recovery after deducting for attorney's fees, litigation costs, and medical expenses relating to the injury paid for by the beneficiary.

62 P.S. § 1409(b)(11) (emphasis added).[8]

they can be or why they should be determinative or controlling as to the definition of "beneficiary" in the Fraud and Abuse Control Act. Furthermore, we discern no indication that the General Assembly intended to override the plain meaning of its own statutory definition of "beneficiary" with the importation of these or any other extra-statutory factors. We must conclude that the dissent has disregarded the plain meaning of the statutory definition of "beneficiary," and has thereby misconstrued

From the plain text of the above subsections, it is clear that, notwithstanding any other provision of law, the General Assembly has conferred upon DPW a statutory right to reimbursement from a beneficiary's settlement with his or her tortfeasor. Nothing in the statute distinguishes a beneficiary who is a minor from one who has reached the age of majority. Furthermore, subsection 1409(b)(11)'s directive that the entire settlement of the beneficiary's claim is subject to DPW's lien, **notwithstanding any other provision of law,** would seem to preclude reliance on any common law rule that might bar a beneficiary from recovering from his or her tortfeasor the monies that DPW expended on his or her behalf during minority.

By the express and incontrovertible text of subsection 1409(b)(11), which was enacted prior to the United States' Supreme Court decision in *Ahlborn, supra,* the General Assembly made clear its intent that the **entire amount of any settlement** of a beneficiary's claim would be subject to DPW's claim for reimbursement. Thus, under the plain text of subsection 1409(b)(11) prior to *Ahlborn,* the allocation of a settlement into different categories of damages, *e.g.,* for medical expenses, pain and suffering, loss of wages, etc., was required neither to determine *whether* DPW's lien should be satisfied, nor to *quantify* to what extent it should be satisfied. Rather, the clear intent of the General Assembly in subsection 1409(b)(11) was that, notwithstanding any other provision of law, including presumably the common law, the entirety of a beneficiary's settlement would be subject to DPW's claim. Given these express directives, we cannot conclude that the General Assembly intended that the application of subsection 1409(b)(11) would be constrained by the common law in such manner as to bar a beneficiary of Medicaid assistance from recovering from his or her tortfeasor the monetary value of that assistance provided during his or her minority. Such an interpretation of subsection 1409(b)(11) would also be inconsis-

the General Assembly's intent with regard to the Fraud and Abuse Control Act.

8. DPW's claim in this case is far less than one-half of Emily's monetary recovery.

tent with subsection 1409(b)(1), which authorizes DPW to recover the benefits provided to a beneficiary **from a person who is liable** for the beneficiary's injury—not from the beneficiary herself.

As discussed *supra,* we are aware that in *Ahlborn,* 547 U.S. at 292, 126 S.Ct. 1752, the United States Supreme Court held unenforceable as violative of federal Medicaid law an Arkansas statute that, similarly to subsection 1409(b)(11), required satisfaction of a state agency lien for Medicaid expenditures from the entirety of a settlement, regardless of how the settlement had been allocated. *Ahlborn* necessitated modification of subsection 1409(b)(11) "[t]o the extent that Federal law limits [DPW's] recovery of medical assistance reimbursement to the medical portion of a beneficiary's judgment, award or settlement...." 62 P.S. § 1409.1. However, nothing in *Ahlborn* affects, negates, weakens, or calls into question the reasoning outlined above as to the General Assembly's **intent** with regard to the filing of claims by beneficiaries for Medicaid expenditures incurred during their minority.[9]

Finally, we recognize the presumption that, when enacting any statute, the General Assembly intended to favor the public interest as against any private interest. 1 Pa.C.S. § 1922(5); *Vitac Corporation,* 854 A.2d at 485. The public interest in the instant case is clear: protecting taxpayers from assuming Medicaid costs that are properly charged against a liable third party. Hence, the public interest favors an interpretation that allows Medicaid beneficiaries to sue their tortfeasors to recover Medicaid expenditures made on their behalf during their minority.[10]

9. We respectfully disagree with the dissent's view that *Ahlborn* is the "death knell" for our analysis. Dissenting Op. at 101, 987 A.2d at 698. *Ahlborn* provides no guidance as to who is a beneficiary of Medicaid assistance provided to or on behalf of a minor. Furthermore, the record does not support the dissent's assertion that our resolution of this case permits DPW to recover funds that it spent for Emily's care during her minority from a settlement that is limited to monies for her medical expenses as an adult. *See* n. 11.

10. The dissent contends that "[a]t the heart of this dispute is centuries' worth of Pennsylvania jurisprudence, which places the responsibility to raise a child upon her parents," which jurisprudence we allegedly have

■■ In sum, we hold that, pursuant to the Fraud and Abuse Control Act, a Medicaid beneficiary has a cause of action against his or her tortfeasor to recover and reimburse DPW for Medicaid benefits received during the beneficiary's minority. Accordingly, we vacate the Superior Court's order and reinstate the order of the Court of Common Pleas dated November 6, 2006.[11]

"summarily dismisse[d]." Dissenting Op. at 96, 987 A.2d at 695. We disagree. Nothing in our decision may properly be interpreted as a relaxation or diminution of the legal and moral responsibilities that parents historically have borne and continue to bear for the rearing of their children. As the dissent acknowledges, the obligation of parents to support their minor children is set forth not only in decisional law, but also in statutory law. *Id.* (citing 23 Pa.C.S. § 4321(2)). Neither is implicated in this case or in our resolution. Rather, this case is focused on a severely disabled child whose parents were financially unable to provide her with all the medical care that she required, prompting public assistance in the form of Medicaid.

We have cited the Commonwealth Court's thoughtful summary of the history of the rights and duties of parents with respect to their children. *See* Majority Op. at 84, 987 A.2d at 688 (citing *Shaffer–Doan*, 960 A.2d at 511–17, a case with facts very similar to those of the instant case, which was decided in opposite manner by the Commonwealth Court). However, we must point out that the broad question of the continuing vitality of the common law doctrine that bars an individual from bringing suit for medical expenses incurred during his or her minority is not before us and is not the basis for our decision.

What is really at the heart of this dispute is not parental rights and responsibilities as they have evolved under the common law, but rather a much narrower issue of statutory interpretation of interlocking provisions of the Fraud and Abuse Control Act, as informed by federal law. Common law jurisprudence fails to speak to the central issue in this case. The policy questions that are implicated focus not on parental duty but on protection of the public fisc in the provision of medical assistance to minors whose parents do not have the financial means to do so. The common law is silent as to the provision of medical care to needy minors and does not contemplate state involvement in administering such care. Accordingly, our resolution of the instant case is based on interpretation of the relevant statutory law, which incorporates social welfare developments independent of common law jurisprudence.

11. The Bowmasters also contend that because their complaint "can reasonably be read as requesting only those damages that Emily could legally recover under the common law rule," *i.e.,* those medical expenses incurred after the age of majority, a remand is required to determine whether the medical benefits that Emily received during her minority were included in the settlement. Bowmasters' Brief at 12. The Bowmasters acknowledge, as they must, that their complaint

alleged that Emily "has been forced to expend sums of money for physicians, hospitals, paramedical personnel, home care attendance, medications and other items necessary for her proper care and treatment." *Id.* at 11 (quoting Complaint at ¶ 30). However, the Bowmasters contend that this paragraph did not include a claim for Emily's medical expenses incurred during her minority. *Id.* Rather, given that the action was commenced only two months before Emily's eighteenth birthday, the Bowmasters insist that this paragraph refers only to medical expenses that were incurred after her majority but prior to trial. *Id.* at 11–12. While we recognize that the complaint is far from a model of clarity, we conclude that the settlement itself and the Bowmasters' own petition for leave to settle an incapacitated person's case reflect that the complaint included claims for medical expenses incurred during Emily's minority. The settlement and the trial court's order clearly contemplated payment of DPW's lien for medical assistance to Emily during her minority.

In any event, this issue is waived pursuant to Pennsylvania Rule of Appellate Procedure 302(a): "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." In the next few paragraphs, we summarize the procedural history of this case in order to explain further these points.

In the Bowmasters' petition for leave to settle an incapacitated person's case, the repayment of DPW's lien was included among the provisions. *See* Petition for Leave to Settle an Incapacitated Person's Case, filed 8/31/06, at 3 and 5. Most relevantly, the petition included the following:

"To protect the lien of DPW, it is proposed that the Special Needs Trust can be funded with the express proviso that the Trustee must set aside $56,517.81 (DPW's lien with a reduction [for] attorney fees and the proportionate share of costs) and hold that amount until further Order of Court that determines the amount that DPW must be repaid.

*Id.* at 5.

The only question raised in this petition as to DPW's lien was whether Emily's medical bills had actually been paid by a managed care organization, and hence whether DPW was entitled to reimbursement only for the insurance premiums that it had paid on Emily's behalf, rather than for the total expenses.

In the order granting the Bowmasters leave to settle, the court of common pleas accepted the Bowmasters' suggestion concerning a set-aside from the settlement to satisfy DPW's lien. Specifically, the court order stated the following:

Additionally, as this Court must hereafter determine the amount that must be repaid to [DPW] to satisfy its lien, the Trustee shall set aside $56,517.81 and shall not spend any of that amount on behalf of [Emily] until further Order of this Court concerning the repayment amount.

Order, Court of Common Pleas of Centre County, filed 8/31/06, at ¶ 4. Following further briefing, on November 6, 2006, the court of common pleas ordered the trustee of Emily's special needs trust to reimburse DPW in the amount of $56,517.81 to satisfy the agency's lien. In reaching this holding, the trial court rejected the Bowmasters' argument that DPW was entitled to reimbursement only for the monthly

Superior Court order vacated. Common Pleas Court order reinstated.

Chief Justice CASTILLE, Justices EAKIN and TODD join the opinion.

Justice SAYLOR files a concurring opinion.

Justice BAER files a dissenting opinion in which Justice GREENSPAN joins.

Justice SAYLOR, concurring.

I join the majority opinion, but for its waiver analysis. *See* Majority Opinion, op. at 90–92 n. 11, 987 A.2d at 692–93 n. 11. In this regard, DPW argues against application of the waiver doctrine based upon the "significant modification to the published case law" occasioned by *Shaffer–Doan v. Commonwealth, Dep't of Pub. Welfare*, 960 A.2d 500 (Pa.Cmwlth.2008),

capitation payments made by DPW to a managed care organization on Emily's behalf. In addition, the trial court rejected the Bowmasters' second, newly advanced argument, *i.e.*, that DPW was precluded from recovering any Medicaid expenditures made on Emily's behalf during her minority, because neither the Bowmasters nor Emily had a claim for such medical expenses.

The Bowmasters then appealed to the Superior Court, raising the following three allegations of error by the trial court: (1) the court erred in holding that DPW could enforce its lien against the settlement proceeds because neither the Bowmasters nor Emily could recover medical expenses incurred by Emily during her minority and hence the settlement did not include such expenses; (2) the trial court erred in holding that DPW was entitled to recover all of Emily's medical assistance expenses, rather than just the capitation fees that DPW had paid to a managed-care organization on Emily's behalf; and (3) the trial court erred by failing to adjust the amount of DPW's lien to reflect an amended statement of claim subsequently filed by DPW. The Superior Court considered only the first issue, reversing the trial court's holding, as discussed *supra* in the text, that DPW was entitled to reimbursement from the settlement proceeds (the third issue does not appear to have been pursued before the Superior Court). *See Bowmaster*, 933 A.2d at 87–88 & n. 1.

This brief procedural history makes clear that the Bowmasters did not previously raise a question concerning the text of their complaint, specifically that the text did not encompass DPW's claim for reimbursement of the medical assistance benefits conferred upon Emily during her minority. We conclude that this issue is waived because the Bowmasters did not raise it before the lower courts. *See* Pa.R.App.R. 302(a).

which "significantly alter[ed] the legal landscape [and] excuses any failure to preserve an issue." Reply Brief for Appellant at 2 (citing *Cleveland v. Johns–Manville Corp.*, 547 Pa. 402, 690 A.2d 1146 (1997)). Given this stance by DPW, it should not benefit from a determination that the Bowmasters have waived the assertion that their complaint sought only medical expenses incurred after Emily was no longer a minor. Rather, I would focus on the fact that the allegations of the complaint, which was filed two months before Emily reached the age of majority, involved both medical expenses already incurred and similar expenditures in the future. *See* Brief for Appellees at 11 (quoting Complaint at ¶ 30). The presence of such allegations supports DPW's argument that the "complaint asserted a claim for past medical expenses incurred during [Emily's] minority, and that claim remained in the case at the time of settlement." Brief for Appellant at 21.

Justice BAER, dissenting.

I respectfully dissent from the Majority Opinion based upon my conclusion that, under the applicable provisions of the Fraud and Abuse Control Act of 1980 (FACA),[1] Emily Bowmaster (Emily) was not the beneficiary of medical assistance payments from the Department of Public Welfare (DPW) during her minority years. Rather, these payments were made to her parents to assist them in meeting their obligation to support Emily during her years of minority. Accordingly, and as explained herein, I cannot agree that DPW can assert a lien against the settlement reached in this case to recover monies paid to Emily's parents to assist them in meeting her substantial care obligations incurred during her minor years.

As noted by the Majority, this case is based upon medical malpractice that occurred during Emily's birth in 1985, at Centre Community Hospital. As a result of the malpractice, Emily was born with severe physical and mental disabilities, and over the many years since birth, DPW provided medical assistance for Emily's childhood care totaling approximately $86,000. Despite the existence of the malpractice, neither

1. Act of 105 of 1980, P.L. 493, *as amended,* 62 P.S. §§ 1401–12.

Emily's parents nor DPW commenced any litigation against the hospital or physicians during Emily's years of minority.

Then, just prior to her eighteenth birthday, Emily's parents initiated a lawsuit on Emily's behalf as an "incapacitated person," [2] against Gerald Clair, M.D. and Centre Community Hospital, alleging that the malpractice was the proximate cause of Emily's permanent and disabling injuries. The suit sought damages related to past and present pain and suffering, expenditures "of money for physicians, hospitals, paramedical personnel, home care attendance, medications and other items necessary for her proper care and treatment," as well as reduced earning capacity. Complaint at 8–9. The parties settled the litigation, and the trial court subsequently approved a petition for leave to settle an incapacitated person's estate. *See* Pa. R.C.P. No. 2064.[3] The trial court further directed the creation of a trust for Emily's future needs and care. *Id.*

As noted, during Emily's years as a minor, DPW provided approximately $86,000 in medical assistance payments towards her care. Accordingly, upon commencement of the lawsuit against Dr. Clair and Centre Community Hospital, DPW asserted a lien against any award or settlement from the litigation in the amount of $56,517.81.[4] DPW did so under the auspices of the FACA, which permits DPW, upon application with the trial court, to assert "as a first lien against the amount of such judgment or award, the amount of the expen-

**2.** As will be fully explained, *infra*, an "incapacitated person" is explicitly defined in the Pennsylvania Rules of Civil Procedure as being, first and foremost, "an adult." Pa. R.C.P. No. 2051.

**3.** I fully acknowledge that the complaint made claims for "past" damages without specifying whether these were limited to post-Emily's eighteenth birthday, or for damages suffered while she was a minor. This is of no concern as the statute of limitations is an affirmative defense *see Romaine v. WCAB (Bryn Mawr Chateau Nursing Home)*, 587 Pa. 471, 901 A.2d 477 (2006) (citing Pa. R.C.P. No. 1030), and, even assuming the doctor and hospital defendants waived the defense and paid too much in the settlement, these factors have no impact on this legal analysis.

**4.** This reduced amount reflects proportionate deductions for attorneys' fees and costs.

ditures for the benefit of the beneficiary under the medical assistance program." 62 P.S. § 1409(b)(7)(i). The trial court granted the lien, and the Bowmasters appealed to the Superior Court. The Superior Court reversed and remanded, finding that DPW could only seek reimbursement for medical assistance payments paid to the Bowmasters after Emily reached the age of majority, because Emily's parents, and not Emily herself, were the beneficiaries of the medical assistance payments made before Emily's eighteenth birthday. *Bowmaster v. Clair*, 933 A.2d 86 (Pa.Super.2007).

By way of background, and for ease of discussion, I first note the following. DPW is the agency responsible for administering medical assistance funds throughout the Commonwealth. When DPW provides such funds to a "beneficiary" because of an injury for which a third person (here, the doctor and hospital) is liable, DPW has the right to recover a reasonable value of funds paid to a "beneficiary." 62 P.S. § 1409(b)(1). DPW may do so either by initiating proceedings, through the Attorney General, against the third-party tortfeasors, *id.*, or by asserting a first lien against the amount of any award or settlement received by the beneficiary. 62 P.S. § 1409(b)(7)(i). Thus, resolution of this appeal revolves around whether either Emily's parents or Emily herself were the "beneficiaries" of the medical assistance payments paid by DPW while Emily was a minor. For the reasons that follow, I would affirm the Superior Court's holding that Emily's parents, and not Emily herself, were the beneficiaries of medical assistance payments during Emily's minor years, and thus DPW cannot assert a lien against the settlement reached in this case.[5]

5. As noted by the Superior Court, an open question remains concerning whether Emily has received any medical assistance payments since she has turned eighteen. It is undisputed that, if she has, DPW can assert a lien against the settlement for recovery of that money. Thus, I would also agree with the Superior Court that a remand to the trial court is necessary to resolve this unanswered aspect of the litigation. Regardless, this appeal solely concerns medical assistance payments provided by DPW for medical care during Emily's minor years and, for a multitude of reasons, in my view, Emily's parents were the true beneficiaries of the payments made during that time period.

At the heart of this dispute is centuries' worth of Pennsylvania jurisprudence, which places the responsibility to raise a child upon her parents. While the Majority summarily dismisses such jurisprudence as a "common law anachronism," Maj. Op. at 85, 987 A.2d at 688 (quoting *Shaffer–Doan v. Department of Public Welfare*, 960 A.2d 500, 511 (Pa.Cmwlth. 2008)), both statutory and decisional law continue to place an almost absolute obligation upon parents to care for minor children: *"Parents* are liable for the support of their children who are unemancipated and eighteen years of age or younger." 23 Pa.C.S. § 4321(2) (emphasis added). Indeed, the Legislature has placed an additional burden on courts to ensure the health and well-being of our young members of society. *See* 23 Pa.C.S. § 4326(a) (providing that, in support orders, "the court shall ascertain the ability of each parent to provide medical support for the children of the parties, and the order shall include a requirement for medical support to be provided by either or both parents, provided that such medical support is accessible to the children."). This Court, on a number of occasions, has also placed the responsibility upon parents to provide for the welfare of their children during their minor years. *See Conway v. Dana*, 456 Pa. 536, 318 A.2d 324 (1974) (the support of minors is the equal responsibility of both mother and father); *In re McCready's Trust*, 387 Pa. 107, 126 A.2d 429 (1956) (parents owe a duty of support to their children during the course of their minor years); *see also Rich v. Rich*, 967 A.2d 400 (Pa.Super.2009) (the moral and legal duties of both parents to support their child is absolute); *In Interest of Lilley*, 719 A.2d 327 (Pa.Super.1998) (parent's basic constitutional right to custody and rearing of his or her child is converted, upon parent's failure to fulfill parental duties, to child's right to have proper parenting and fulfillment of her potential in permanent, healthy, safe environment).

In part, because parents are responsible for the well-being and protection of their children, Pennsylvania has traditionally segregated causes of action, and, consequently, the award of damages to minors, when a minor is injured by a third-party tortfeasor. "The measure of damages where a parent sues for

a personal injury to a minor child ... is hospital and medical bills and expenses incurred because of the injury...." *Discovich v. Chestnut Ridge Transp. Co.*, 369 Pa. 228, 85 A.2d 122, 124–25 (1952); *see also Meisel v. Little*, 407 Pa. 546, 180 A.2d 772, 773 (1962) (recognizing that minors may only recover reasonable compensation for pain and suffering and future loss of earning power when they are injured by third-party tortfeasors). In that same light, when a cause of action is brought on behalf of a minor against a tortfeasor, and the minor wins a verdict, the verdict in favor of the minor child shall not include "one cent for hospital expenses or doctor's bills; that all such items would have to be included in the verdict, if any, for the father; and that [lienholders] would have to look to the father for payments." *In re Mikasinovich*, 110 Pa.Super. 252, 168 A. 506, 509 (1933) (citing *e.g. Phila. Traction Co. v. Orbann*, 119 Pa. 37, 12 A. 816 (1888)). The contrary, thus, is equally true: claims for losses suffered after an injured party reaches the age of majority, including medical expenses, belong to the injured alone, and not her parents. *Brower v. City of Philadelphia*, 124 Pa.Cmwlth. 586, 557 A.2d 48, 50 (1989) (citing *Quinn v. City of Pittsburgh*, 243 Pa. 521, 90 A. 353 (1914)). Despite the suggestions by the Majority to the contrary, this Court has never even questioned, let alone abrogated, this precedent.

To place this appeal into this framework, the aggrieved parties as concerns Emily's medical expenses during her minority years are her parents. Conversely, the damages sought for medical expenses in the suit instantly, brought on Emily's behalf as an incapacitated person, belong to Emily alone, and are solely for her care as an adult.[6]

6. To that end, it is worthy of note that the trial court instituted a trust fund and appointed a trustee for the disbursement of funds out of the settlement with Dr. Clair and Centre Community Hospital. In my view, the appointment of a trustee to oversee the settlement proceeds lends even more credence to the suggestion that Emily was the sole beneficiary of the action's proceeds. If these funds were to reimburse Emily's parents (or DPW) for monies spent on Emily's care during her childhood, the trust would have been unnecessary, and the proceeds could have been distributed directly to the parents (or DPW).

As conceded by all parties, Emily's parents lost their claims for medical expenses they incurred during Emily's minor years over twenty years ago under the statute of limitations applicable to those claims. A statute of limitations "begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations. The statute of limitations requires aggrieved individuals to bring their claims within a certain time of the injury," otherwise, the aggrieved party generally loses all right to recovery for sustained injuries. *Dalrymple v. Brown*, 549 Pa. 217, 701 A.2d 164, 167 (1997). Here, Emily's parents were required to bring any litigation in their own right for Emily's minor-year medical expenses and loss of services within two years of the alleged date of Emily's injury, *i.e.*, by Emily's second birthday. *See Fancsali v. Univ. Health Ctr. of Pgh.*, 563 Pa. 439, 761 A.2d 1159, 1164 (2000) (holding that parents' causes of action arising out of injuries to their child at birth "accrued when [the child] was born, but the two-year limitation period for their claims began to run at that time."); *see also* 42 Pa.C.S. § 5524 (providing that an action to recover damages for injuries done unto a person must be commenced within two years of the date of the occurrence).

Conversely, the Legislature has specifically provided an exception to the statute of limitations for minors:

> [. . .] the period of minority shall not be deemed a portion of the time period within which the action must be commenced. Such person shall have the same time for commencing an action [7] after attaining majority as is allowed to others by the provisions of this subchapter.

42 Pa.C.S. § 5533(b). Thus, while Emily's parents had until her second birthday to sue for medical expenses incurred on Emily's behalf during her minor years, Emily's cause of action in her own right for medical expenses incurred after her eighteenth birthday, as well as pain and suffering for her

---

7. Here, such time would be two years after Emily turned eighteen, *i.e.*, her twentieth birthday. 42 Pa.C.S. § 5524.

entire life, did not expire until her twentieth birthday.[8] Thus, because (1) claims relating to Emily's minor years' care belonged exclusively to her parents, and (2) those claims expired in 1987, the settlement instantly could only have included monies for medical expenses incurred during Emily's adult years.[9]

For these same reasons, I must also conclude that under the FACA, Emily's parents were the beneficiaries of the medical

8.  This is not to say that Emily was forced to wait until her eighteenth birthday to seek those damages. *See Fancsali,* 761 A.2d at 1164 (recognizing that a child's claim, while brought at the same time as the parents', "does not alter the fact that [the child's] claim, when viewed in isolation, could have been filed at any time prior to [the child's twentieth birthday].")

9.  Moreover, while, as mentioned in note 3, Emily's complaint is ambiguous, there is support therein for the proposition that her counsel recognized that the instant action could only recover medical expense damages related to Emily's adult years' care by explicitly listing Emily, the sole plaintiff in the action, as an "incapacitated person." The rules of civil procedure define an "incapacitated person" as

    *an adult* whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that the person is partially or totally unable to manage financial resources or to meet the essential requirements for physical health and safety.

    Pa. R.C.P. No. 2051 (emphasis added). Furthermore, the comments to Rule 2051 specifically distinguish between incapacitated persons and minors:

    Several rules of civil procedure have been amended to conform to the recent amendments to the Probate, Estates and Fiduciaries Code by Act No. 24 of 1992. The Act introduced a new nomenclature, replacing the term "incompetent" with the term "incapacitated person" throughout most of the Code and in a number of other statutes.

    *　　　*　　　*

    Former Rule 2052 provided that the rules governing incompetents applied to the exclusion of all other rules relating to disabilities. Thus, prior to the enactment of Act No. 24, if a party were both a minor and incompetent, the rules governing incompetents prevailed over the rules governing minors. *However, Act No. 24 defines an "incapacitated person" as an adult so that an incapacitated person can no longer be subject to two chapters of rules.* Since there are no other rules governing disabilities, Rule 2052 became obsolete and has been rescinded.

    *Id.,* comment (emphasis added). Based upon the relevant portions of the complaint's language, then, it appears reasonable to infer that the parties to the settlement, *i.e.,* Emily, Dr. Clair, and Centre Community Hospital (and, notably, **not** DPW), contemplated only compensating Emily for medical expenses she has, and will, incur as an adult.

100

assistance payments provided by DPW during Emily's minor years, and, thus, DPW cannot recuperate those funds from this settlement. The Majority holds otherwise for two reasons. First, it looks to the statutory definition of "beneficiary" within the FACA:

"Beneficiary" means any person who has received benefits or will be provided benefits under this act because of an injury for which another person may be liable. It includes such beneficiary's guardian, conservator, or other personal representative, his estate or survivors.

62 P.S. § 1409(b)(13). The Majority, in cursory fashion, reads the second sentence of this definition, which includes the phrase "beneficiary's guardian," as making "indisputably clear that the direct recipient of the medical benefits" is Emily. Maj. Op. at 86, 987 A.2d at 689. In light of the above discussion, however, concerning the responsibility of parents to care for their children, their legal standing to seek redress for their child's medical expenses, and the passing of the statute of limitations for those clams in this case, I do not agree that Emily as a minor was a beneficiary of payments from DPW.

To the contrary, Pennsylvania law seems clear that the parent shall take charge of a child's health and well-being, and, at least as this appeal is concerned, thus also solely retains standing to seek damages for a minor's medical expenses. Therefore, DPW could only assert a lien against the parents for recuperation of the funds it expended on Emily's minor years' care on their behalf. *See Mikasinovich, supra* p. 696.[10] I cannot agree with the Majority that the General Assembly's inclusion of "beneficiary's guardian" within the statutory definition is proof positive that minor children are automatically beneficiaries of medical assistance payments

10. Of course, as the Majority notes, there was a legislative response to the Superior Court opinion instantly, which now permits minors to pursue such actions, such that DPW may now also assert liens against awards or settlements. Act of July 4, 2008, P.L. 557, No. 44, effective Sept. 2, 2008, *as codified,* 62 P.S. § 1409(b)(4)(iii)(D). Such a response indicates to me that even the General Assembly understood that, without legislative action, minors simply possessed no legal right to pursue damages for their minor years' medical expenses.

received from DPW, merely because (generally) a minor's parent is also his or her guardian.

Second, the Majority draws support by claiming that the Legislature intended for courts to ignore common and statutory law when construing the FACA:

Except as otherwise provided in this act, *notwithstanding any other provision of law,* the entire amount of any settlement of the *injured beneficiary's action or claim,* with or without suit, is subject to [DPW's] claim for reimbursement of the benefits provided [ . . . ].

62 P.S. § 1409(b)(11), *quoted in* Maj. Op. at 87, 987 A.2d at 689 (emphasis added). In that light, the Majority holds that "notwithstanding any other provision of law would seem to preclude reliance on any common law rule that might bar a beneficiary from recovering from his or her tortfeasors the monies that DPW expended on his or her behalf during minority." Maj. Op. at 88, 987 A.2d at 690. This statement, however, puts the proverbial cart before the horse, because, based upon the plain language of the above-quoted statute, the subject person must first be a beneficiary before "any other provision of law" precludes him or her from challenging DPW's lien against an award. As I cannot agree that Emily is a beneficiary, I do not believe that this generalized language should be employed to abrogate the long-standing principles concerning parents' responsibilities to care for their children.

Finally, the United States Supreme Court's recent holding in *Arkansas Department of Health and Human Services v. Ahlborn,* 547 U.S. 268, 126 S.Ct. 1752, 164 L.Ed.2d 459 (2006), in my view, is the death knell for the Majority's analysis. In *Ahlborn,* the High Court considered a statutory scheme similar to that of Pennsylvania's, under which the Arkansas Department of Health and Human Services attempted to collect on a lien from the entirety of a damages award. The Supreme Court rejected such an approach, however, finding that as a matter of federal Medicaid law, state agencies could only satisfy their asserted liens from portions of awards or settlements earmarked for medical care and expenses. *Id.* at 282, 126 S.Ct. 1752.

As discussed at length, in my view, the settlement generated out of this litigation could only include a claim for medical expenses incurred by Emily during her majority years. For the reasons set forth herein, claims for minor-year medical expenses were Emily's parents' alone; and as the medical assistance payments relevant to this appeal relate only to Emily's minor years, DPW's redress was through the parents, as they were the true beneficiaries of the medical assistance payments made for Emily's care during that time. Notwithstanding that these claims have long since expired, DPW cannot now attack the settlement for Emily's adult-years' care to satisfy its lien, when she was not the beneficiary of the subject funds.[11] To be sure, the Majority's permitting of such a course of action allows DPW to recover funds it spent for Emily's care as a minor, from a settlement, which necessarily only includes monies for medical expenses incurred, and to be incurred, while Emily is an adult.

Moreover, even after Emily's parents' claims expired on her second birthday, DPW was still not without recourse to recover the medical assistance payments. Under the FACA, DPW specifically has the authority, through the Attorney General, to pursue third-party tortfeasors directly for reimbursement of medical assistance payments. 62 P.S. § 1409(b)(1). Such actions themselves, however, have five-year statutes of limitation, which has also expired. 62 P.S. § 1409(b)(4); *Jordan v. Western Pennsylvania Hosp.*, 961 A.2d 220 (Pa.Cmwlth. 2008).[12] While its common practice may be to sit back and await an initiation of proceedings by a private party, only now after DPW finds itself bound by hundreds of years of precedent and an expired statute of limitations does it advocate a radical interpretation of the law so that it may recover those funds from the injured party. Such an interpretation, howev-

11. Had *Ahlborn* never been decided, it would appear to me that DPW could have attacked the settlement, as it specifically included damages related to pain and suffering for Emily's entire life.

12. The amendments to the FACA enacted by the General Assembly in 2008, *see supra* note 10, increased this limitations period from five to seven years. As with the amendments mentioned above, however, such an increase is not applicable to the instant appeal.

er, simply does not survive in the face of longstanding Pennsylvania jurisprudence.

Accordingly, for the reasons articulated herein, I must respectfully dissent.

Justice GREENSPAN joins this opinion.