Grady JORDAN, a minor, By and Through his parents and natural guardians, Brian JORDAN and Pamela Jordan

v.

The WESTERN PENNSYLVANIA HOSPITAL, d/b/a West Penn Hospital, West Penn Allegheny Health System, Inc., Birth Place, (Midwifery Services of Western Pennsylvania Hospital), c/o Western Pennsylvania Hospital d/b/a West Penn Hospital, Aurora Miranda, M.D., Carol Manspeaker, C.N.M.

Appeal of: Department of Public Welfare.

Commonwealth Court of Pennsylvania.

Argued Sept. 8, 2008.
Decided Nov. 10, 2008.

Jason Manne, Sr. Counsel, Pittsburgh, for appellant.

Charles L. Becker, Philadelphia, for appellee, Grady Jordan.

BEFORE: LEADBETTER, President Judge, COHN JUBELIRER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

The Department of Public Welfare (the Department) appeals an order of the Court of Common Pleas of Allegheny County (trial court) that overruled the Department's objections to the trial court's approval of a settlement of a tort action brought by the parents of Grady Jordan, a minor, on his behalf, seeking damages for injuries he suffered as a result of alleged medical malpractice at the time of his birth. We vacate the trial court's order and remand to the trial court for further action.

Grady was born on December 12, 1997, at West Penn Hospital. Nearly eight years after his birth, on September 27, 2005, Grady's parents (the Jordans) filed a complaint alleging medical malpractice on behalf of Western Pennsylvania Hospital, d/b/a West Penn Hospital, West Penn Allegheny Health System, Inc., Birth Place (Midwifery Services of Western Pennsyl-vania Hospital), Aurora Miranda, M.D. and Carol Manspeaker, C.N.M. (hereafter collectively referred to as Defendants).

Specifically, the complaint alleged that Grady was not breathing at the time of his birth and that staff at the hospital failed to take appropriate and immediate measures to resuscitate him. The complaint indicated that Grady did not take his first breath until twenty minutes after his birth. As a result of his traumatic birth, the complaint alleged that Grady suffers from various conditions, including cerebral palsy, seizures, respiratory distress and gastroesophogeal reflux, all of which require long-term care. The complaint originally sought, among other things, recovery for past medical expenses.

Counsel for the Jordans sent a letter to the Department dated December 23, 2005, indicating the fact of his representation of the Jordans in the personal injury action and requesting the Department to notify counsel if it had "any type of lien with respect to Grady's care." (R.R. at 132a). The letter noted the date of Grady's birth and similar information regarding the Jordans. The Department replied by letter indicating that counsel was required to include in his written notice the docket number of the lawsuit and other pertinent information. However, the Department's letter did not indicate that counsel was required to submit a copy of the complaint.

The Department's correspondence did include various instructions regarding the responsibility of litigants who have or will receive medical assistance benefits through the Department. One such direction alerted the Jordans' counsel that "[y]ou are required to send the Department ... one-month's advance notice of any settlement of a claim or lawsuit." (R.R. at 133–135a). By letter dated February 22, 2006, the Department informed the Jordans' counsel

of its "lien against your client's personal injury award," and requested information regarding the then-current status of the claim. (R.R. at 136–7a).

On May 16, 2006, the legal assistant to the Jordans' counsel sent a letter to the Department seeking an updated statement of monetary claims regarding the Department's lien for Grady's medical costs. (R.R. at 138a). The Department responded by letter dated May 22, 2006, providing counsel with the requested information. (R.R. at 139a).

During the course of the trial, the parties proceeded with indications that past medical costs would remain as part of the damages sought in the complaint. For example, the Department points out that the Jordans submitted a trial exhibit that included such costs, and also submitted a point for charge to the jury that included past medical costs. However, on May 9, 2007, Defendants filed a motion in limine seeking to exclude the Jordans' claim for past medical costs. The Jordans averred in their answer to the Department's objections to the settlement that they did not oppose the motion in limine because they agreed with Defendants that the claim for past medical costs was not meritorious. (R.R. at 114a).

However, despite the fact that the Jordans' counsel knew or should have known at the time that, by acquiescing to Defendants' motion, the Jordans were foreclosing the Department from pursuing on its own, as a potential intervenor, any challenge to the parties' decision not to pursue the past medical costs claim, they never informed the Department of this key litigation decision. The Jordans' failure to inform the Department regarding Defendants' motion and their litigation decision with regard to the same ultimately proved to divest the Department of its right to pursue a claim for its lien.

On May 18, 2007, the Jordans and Defendants entered into an agreement that would guarantee Grady a minimum settlement of $10 million and a maximum of $23 million (high-low agreement). As its title implies, a high-low agreement provides each party with a minimum and maximum payment, depending on the amount a jury awards a plaintiff. On May 22, 2007, a jury awarded Grady approximately $57 million. As a result of the high-low agreement, however, Defendants were only required to pay Grady $23 million.

In summary, the Jordans never informed the Department regarding the motion in limine, failed to provide the required thirty-days notice of the hi-low settlement agreement and also failed to apprise the Department of the status of the case until June 13, 2007, when the parties filed with the trial court their petition to approve Grady's minor's settlement with proposed distribution.

On July 5, 2007, the Department filed its objections to the Jordans' petition to approve the settlement. In those objections, the Department complained that the Jordans had provided incomplete and inadequate notice to the Department of the status of the case. The Department also asserted that, based upon that inadequate notice, the trial court should disapprove the settlement and should provide the Department with an opportunity to intervene. The trial court issued an order on July 18, 2007, approving the settlement and part of the proposed distribution of the settlement funds, but also directing that the amount of the lien claimed by the Department be placed in an escrow account pending the resolution of the Department's objections. The Department first sought to appeal that order, notwithstanding the fact that the trial court had not yet acted on the objections, and the Superior Court quashed that appeal and directed that the

Department file any future appeals with this Court.

Following the quashing of the appeal, the Department sent a letter to the trial court on November 7, 2007. The letter referenced the trial court's previous order approving settlement and requested an opportunity to conduct discovery regarding "whether the parties' settlement agreement included the medical claim." (R.R. 123a). The letter made specific references to "MCARE releases" and the Department's alleged right to obtain such information. On January 31, 2008, the trial court overruled the Department's objections. The Department filed a notice of appeal with the trial court. The trial court thereafter directed the Department to file a concise statement of matters complained of on appeal.

The trial court then issued an opinion in support of its order citing the Superior Court's decision in *Bowmaster v. Clair*, 933 A.2d 86 (Pa.Super.2007), *petition for allowance of appeal granted*, —— Pa. ——, 959 A.2d 900 (2008), as the sole basis for denying the Department's objections. In that case, the Superior Court held that a minor may not sue for past medical costs in his own right. Rather, the Court concluded, where a minor is concerned, only parents have a right to seek recovery for the minor's past medical costs.

In this appeal, the Department raises the following issues: (1) whether the Jordans are equitably estopped from asserting that Grady's minor's settlement does not include past medical costs paid by the Medical Assistance; (2) whether the trial court erred in denying the Department's request to intervene; and (3) whether the trial court erred in not allowing the Department to conduct discovery that might enable it to develop facts relevant to its estoppel and intervention arguments.

Before addressing the issues in this case, a review of the statutory framework involving the Department's interest in third-party lawsuits such as Grady's minor's lawsuit is warranted in order to aid our insight into the Department's position with regard to the litigation that occurred in this case.

Title XIX of the Social Security Act, known as the Medicaid Act, 42 U.S.C. §§ 1336–1396(v), provides for the funneling of federal funds through the states for medical assistance to qualifying individuals. The Department administers the Medicaid program in the Commonwealth. Grady Jordan, by virtue of his disabling condition, is an eligible individual.

■ When the Commonwealth distributes funding to eligible persons for services covered by the Medicaid Act, the state bears the responsibility to seek recovery of funds paid to such individuals when they are successful in lawsuits against third parties. As the Department quotes from the Act in its brief, the Commonwealth must "take all reasonable measures to ascertain the liability of third parties" and must "seek reimbursement to the extent of such legal liability." 42 U.S.C. § 1396a(a)(25)(A) and (B). In Grady's case, his parents, albeit on Grady's behalf, obtained benefits under the Act, and, consequently, the Department has a genuine interest in any tort actions involving him.

■ To effectuate the Department's responsibilities under federal law, our General Assembly adopted the Public Welfare Code's (Code's) Fraud and Abuse Control Act (FACA),[1] 62 P.S. §§ 1404, 1409, the provisions of which authorize the Department to take various actions to obtain re-

---

1. Act of June 13, 1967, P.L. 31, added by the      Act of July 10, 1980, P.L. 493, *as amended.*

imbursement of Medicaid payments. Of particular relevance to this case is Section 1409 of the Code, relating to third party liability. Under this Section, the Department has several options in fulfilling its responsibilities under the Medicaid Act, including the right to sue a potential third-party tortfeasor under Subsection (b)(1) and the right to intervene at any time before trial in any litigation involving a potential third-party tortfeasor under Subsection (b)(5). The Department also may place a statutory lien on tort recoveries under Subsection (b)(7).

Formerly, the Department could place a lien upon and obtain recovery from a personal injury award for past medical costs regardless of the manner in which the damages included in the award were allocated, i.e., the award could be pain and suffering and medical damages, and the state could recover from both the medical and pain and suffering allotments. However, in 2006, as a result of the United States Supreme Court's decision in *Arkansas Department of Health and Human Services v. Ahlborn*, 547 U.S. 268, 126 S.Ct. 1752, 164 L.Ed.2d 459 (2006), states may only seek to place liens upon and to recover from awards of medical damages. The Department asserts that this change of law has encouraged the practice of litigants initially to include medical costs in a complaint but then to eliminate those claims when potential settlement seems near at hand. In this way, the Medicaid recipient will gain a greater recovery— one that is not subject to Department liens or recoupment.

The distinct problem presented in this case is that Grady is a minor, and that the Superior Court in *Bowmaster* had interpreted the law to preclude minors from seeking to recover damages in a lawsuit for medical costs incurred during the period of minority. One underlying policy of the law placing the right to recovery with the parents of a minor child is that parents ultimately are held responsible for such costs. However, in this case, the Jordans did not file a lawsuit in their own name.

Moreover, we note this Court's recent decision in *Shaffer–Doan v. Department of Public Welfare*, 960 A.2d 500 (Pa.Cmwlth. 2008), in which this Court rejected the Superior Court's analysis in *Bowmaster*. In *Shaffer–Doan*, the Court provided a thorough analysis of not only the evolution of the law regarding the rights of minors to sue for medical costs, but also the impact of FACA on the development of the law. We concluded as follows:

> FACA's provisions go to great length to ensure that DPW has a place at the settlement table and, if necessary, the trial table, in cases for which it has paid MA benefits. By providing DPW the opportunity to be involved in negotiations, the statutory language affords DPW the means to ensure that any settlements have a specific line item for DPW's claims or lien. Such a system serves the dual function of protecting the Commonwealth's taxpayers by allowing DPW to be compensated from the actual tortfeasors, while not detracting from the minor's recovery. This opportunity that the General Assembly statutorily afforded DPW cannot be taken away by improper notice nor by antiquated notions of dual recovery.

> Accordingly, given the facts presented to us in this declaratory judgment, we conclude that a minor is not prevented from seeking medical expenses incurred while he is a minor, so as to enable DPW to recover its lien for monies it has expended, as long as such a claim is not duplicated by the parents.

*Shaffer–Doan*, 960 A.2d at 516.

With this statutory and legal background in mind, the Court will pro-

ceed to address the Department's arguments. The Department first argues that the trial court erred by denying its request for an opportunity to intervene.[2] The Department refers this Court to several decisions relating to the right of the Department to intervene in a personal injury lawsuit.

In *Miller v. Lankenau Hospital*, 152 Pa.Cmwlth. 266, 618 A.2d 1197 (1992), this Court evaluated the Department's appeal from a trial court's decision denying the Department's petition to open settlement and to permit intervention. A Medicaid beneficiary sued Lankenau Hospital and a trial court approved a settlement. A year after that order, the plaintiff notified the Department of the settlement, at which time the Department filed its motion. This Court, relying upon the language of Section 1409(b)(9) of the Code, reversed the trial court's decision. Section 1409(b)(9) states that "[n]o .... settlement in any action or claim by a beneficiary to recover damages for injuries where the department has an interest, shall be satisfied without first giving the department notice and opportunity to perfect [its] lien." This Court reasoned that the Code does not require the Department to act until it receives actual notice of a proposed settlement.

In this case, if the Jordans had notified the Department of the proceedings in the trial court, the Department would have sought to participate and to challenge the holding in *Bowmaster* at the trial court level. If the trial court rejected the argument, now found to have merit in *Shaffer–Doan*, the Department, as an intervenor, would have had the opportunity to appeal that rejection.

The Jordans also argue that neither *Miller*, nor the other cases upon which the Department relies in seeking to intervene, apply in this case. First, the Jordans assert that, in those cases, DPW did not receive notice of the suit until after the cases had been completed and marked settled in the dockets. The Jordans argue not only that intervention is unavailable under the circumstances, but also that it is unnecessary. The Jordans contend that (1) the Department lost its right to assert a claim when the statute of limitations ran out on their individual right to sue; and (2) Section 1409(b)(4) contains a five-year statute of limitations with respect to the Department's own claims.

We find no merit with regard to the first contention because it erroneously assumes that the Department would have no right to relief if it attained intervenor status. In other words, the Jordans rest their claim that intervention is unnecessary on the presumption that the Department would have had no right to assert its lien in any scenario. However, this argument ignores our observation above, that the Department, by virtue of the Jordans' failure to apprise the Department of the status of the case, lost not just a right to assert a lien but also the right to seek to change the law. Further, the holding in *Shaffer–Doan* provides authority for concluding that the Department does indeed have a claim.

From a hypothetical perspective, if the Jordans had advised the Department of

---

2. Although this aspect of the objections is not denoted as a motion or petition, thus clearly triggering a standard of review by this Court limited to considering whether the trial court abused its discretion or erred as a matter of law in denying the intervention request, *Chairge v. Exeter Zoning Hearing Board*, 151 Pa.Cmwlth. 220, 616 A.2d 1057 (1992), *petition for allowance of appeal denied*, 536 Pa. 632, 637 A.2d 292 (1993), we will review the trial court's action on that basis, as the pleading, albeit not captioned as a petition to intervene, did request the "opportunity" to intervene.

the status of the lawsuit, and of their action in electing not to oppose the motion in limine that resulted in the exclusion of the medical costs claim, the Department could have intervened at an earlier stage of the proceedings and responded to the motion in limine with arguments seeking to establish the exception described above. If the trial court had agreed with the argument, the parties and the newly participating intervenor might not have reached a settlement that excluded medical costs.

With regard to the Jordans' argument that the five-year statute of limitations contained in Section 1409(b)(4) precludes the Department from intervening in this action, we must conclude that the Department's right to intervene springs from the Jordans' filing of the suit on Grady's behalf. The five-year statutory limit applies only in situations in which the Department elects to pursue an action on its own behalf against a potential third-party tort-feasor. In summary, we believe that the Jordans' notice to the Department was deficient and, accordingly, our holding in *Miller* applies. Moreover, based upon our recent decision in *Shaffer–Doan*, the trial court's reliance on *Bowmaster* appears to have been misplaced. Thus, we conclude that the trial court erred in declining to grant the Department's request to intervene.[3]

Accordingly, the order of the trial court is vacated. The matter is remanded to the trial court, which is directed to provide the Department with the opportunity to conduct discovery, and is directed also to consider any motions the Department may file as an intervenor regarding the settlement. Following, or concurrently with the Department's discovery, the Department will have an opportunity as an intervenor to seek additional relief at the trial court level from the settlement and the outcome of the jury's verdict.[4]

## *ORDER*

AND NOW, this 10th day of November, 2008, the order of the Court of Common Pleas of Allegheny County (trial court) is vacated and this case is remanded to the

---

**3.** Further, in considering requests to intervene, we are guided by the rules governing intervention in the Pennsylvania Rules of Civil Procedure. Pa. R.C.P No. 2327, pertaining to "who may intervene," provides as follows: [a]t any time during the pendency of an action, a person not a party ... shall be permitted to intervene therein, subject to these rules if .... (2) such person is so situate as to be adversely affected by a distribution or other disposition of property in the custody of the court or of an officer thereof; (3) such person could have joined as an original party in the action or could have been joined therein; or (4) the determination of such action may affect any legally enforceable interest of such person.... We believe that the Department's position in this case falls within at least one of the above-quoted provisions allowing for intervention. Additionally, the Code clearly vests in the Department certain rights regarding involve-

ment in on-going litigation. Although Pa. R.C.P No. 2328 requires a party to file a petition to intervene, the objections the Department filed do include a request for an opportunity to intervene. Accordingly, the trial court had a requirement to consider that request, and upon review of the record below, we see no indication that the trial court entertained that request. Although a trial court's action on a petition to intervene is subject to our review only for an abuse of discretion, we have little difficulty concluding that, when a court does not consider such a request at all on the merits, we may reverse the trial court and direct the court to evaluate the petition in accordance with the law governing intervention.

**4.** Based upon the foregoing, we need not address the Department's equitable estoppel argument.

trial court for further proceedings consistent with this opinion.

Jurisdiction relinquished.