| | | |
|---|---|---|
| Dura-Bond Coating, Inc., | : | CASES CONSOLIDATED |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Ryan Marshall and PI&I Motor | : | |
| Express (Workers' Compensation | : | |
| Appeal Board), | : | No. 1123 C.D. 2023 |
| Respondents | : | |
| | : | |
| PI&I Motor Express, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Ryan Marshall and Dura-Bond | : | |
| Coating, Inc. (Workers' | : | |
| Compensation Appeal Board), | : | No. 1137 C.D. 2023 |
| Respondents | : | Argued: October 9, 2024 |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE ELLEN CEISLER, Judge
HONORABLE STACY WALLACE, Judge
HONORABLE MATTHEW S. WOLF, Judge

OPINION BY
JUDGE COVEY                                              FILED: November 18, 2024

Dura-Bond Coating, Inc. (Dura-Bond) and PI&I Motor Express (PI&I)

(collectively, Employers)[1] petition this Court for review of the Workers'

---

[1] The Workers' Compensation (WC) Judge (WCJ) found that Ryan Marshall (Claimant) was an immediate employee of PI&I's agent, Samuel Russell Trucking (SRT), and ruled that Dura-

Compensation (WC) Appeal Board's (Board) September 12, 2023 order reversing the WC Judge's (WCJ) decision that granted PI&I's Petition to Review Medical Treatment (Review Petition), which Dura-Bond joined, and ordered Dura-Bond to reimburse the Department of Human Services' (DHS) lien for payments DHS made for Ryan Marshall's (Claimant) medical treatments (DHS Lien),[2] with a right of indemnification from PI&I.  Employers present three issues for this Court's review: (1) whether the Board erred by concluding that Employers are obligated to pay the DHS Lien despite that Claimant's claim is compensable and his medical service providers never submitted billing forms and medical reports to Employers as required for payment under the WC Act (Act) and the WC Medical Cost Containment Regulations (MCCR);[3] (2) whether the Board erred by determining that the portion of the Human Services Code (Code) referred to as the Fraud and Abuse Control Act (FACA)[4] and DHS's Regulations require Employers to pay the DHS Lien without first having the opportunity to confirm the causal relationships of Claimant's medical treatments and that they were reasonable and necessary, thereby superseding Employers' rights under the Act; and (3) whether the Board violated Employers' due process rights by not allowing them to review the providers' medical

Bond and PI&I were Claimant's statutory employers.  The WCJ determined that SRT and PI&I, which were uninsured, had already defaulted on their obligations under the WC Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710, by failing to carry WC insurance, and stayed orders against SRT and PI&I, and ordered Dura-Bond to pay Claimant's WC benefits, with entitlement to indemnification from PI&I.  Although this Court's October 26, 2023 Order consolidating Dura-Bond's and PI&I's separate appeals from the Board's order named Dura-Bond as the designated petitioner and Claimant and PI&I as designated respondents, PI&I adopts and incorporates Dura-Bond's arguments and analysis.  *See* PI&I Br. at 4.

[2] "Title XIX of the Social Security Act, known as the Medicaid Act, 42 U.S.C. §§ [1396-1396w-8], provides for the funneling of federal funds through the states for medical assistance to qualifying individuals.  [DHS] administers the Medicaid program in the Commonwealth." *Jordan ex rel. Jordan v. W. Pa. Hosp.*, 961 A.2d 220, 223 (Pa. Cmwlth. 2008).

[3] 34 Pa. Code Ch. 127, 34 Pa. Code §§ 127.1-127.755.

[4] Act of June 13, 1967, P.L. 31, *as amended*, added by Section 3 of the Act of July 10, 1980, P.L. 493, 62 P.S. §§ 1401-1418.

2

bills and reports before having to pay the DHS Lien.[5]  After review, this Court reverses and remands.

The parties do not dispute the facts.  Claimant sustained a work injury on June 27, 2014, that resulted in amputation of both of his lower extremities and other injuries.  After extensive litigation, by November 1, 2016 decision, the WCJ (1) granted Claimant's Petition to Claim WC Benefits, (2) deemed Dura-Bond and PI&I Claimant's statutory employers, and (3) ordered Dura-Bond to pay the full amount of WC benefits with entitlement to indemnification from PI&I.[6]  Dura-Bond paid DHS's lien for bills DHS had paid on Claimant's behalf to that point.[7]

Notwithstanding the WCJ's November 1, 2016 ruling that Employers were liable for Claimant's medical expenses and Employers' discussions with, and a February 21, 2021 written request to Claimant's counsel asking that Claimant's medical bills be submitted to Employers as required by the Act, a number of Claimant's medical providers continued to submit their bills to DHS, and DHS paid the providers.  By April 7, 2021 letter, DHS notified Dura-Bond of the DHS Lien, which eventually reached $153,539.74.  *See* Reproduced Record at 92a.

On October 7, 2021, PI&I filed the Review Petition, which Dura-Bond joined due to the DHS Lien.  Therein, Employers alleged that Claimant failed to

---

[5] This Court has reordered Employers' issues because, as reordered, Employers' first and second issues are dispositive.

[6] On December 20, 2019, the WCJ approved compromise and release agreements between Claimant and Dura-Bond and between Claimant and PI&I, respectively.  The compromise and release agreements related only to wage loss and specific loss benefits, leaving Claimant's medical benefits open.

[7] According to the record evidence, at the time the WCJ issued the November 1, 2016 decision, DHS had a lien for $141,763.73 related to medical treatment provided to Claimant to that point.  On or about August 29, 2017, Employers paid that DHS lien.  *See* WCJ Dec. at 4.  Following the WCJ's November 1, 2016 decision, Dura-Bond repriced and paid medical bills submitted to it by providers with treatment notes, and PI&I reimbursed Dura-Bond therefor.  *See id*.  Employers remain willing to pay medical bills that are causally related to Claimant's work injury and are reasonable and necessary.  *See* Dura-Bond Br. at 21-22.

3

ensure that providers billed his treatment expenses to Employers pursuant to Section 306(f.1) of the Act, 77 P.S. § 531 (relating to the payment process for compensable medical bills). Claimant opposed the Review Petition. The WCJ conducted hearings on November 8, 2021 and April 25, 2022, at which the parties only presented documentary evidence. By July 22, 2022 decision, the WCJ granted the Review Petition, having found that the providers and DHS were or should have been aware that Employers were liable for Claimant's medical bills, but nevertheless bypassed Employers and continued to bill DHS. The WCJ acknowledged Employers' statutorily-imposed obligation to repay the DHS Lien pursuant to Section 1409 of the FACA, 62 P.S. § 1409, but, relying on the Act and the MCCR, the WCJ concluded that Employers "are not obligated to reimburse the [DHS L]ien . . . unless and until the bills in question are submitted to them for review, payment, denial[,] and/or [u]tilization [r]eview in accordance with the . . . Act." WCJ Dec. at 8. Claimant appealed to the Board.

On September 12, 2023, the Board, having interpreted the WCJ's decision as holding that Employers "are not responsible for payment of the DHS [L]ien[,]" Bd. Op. at 6, reversed, concluding that Employers were responsible for paying the DHS Lien.[8] The Board reasoned that the providers' erroneous submission of Claimant's medical bills to DHS did not invalidate the DHS Lien where the Act/MCCR medical billing process for WC injuries applies only to *providers* - not DHS - and the Act/MCCR do not supersede DHS's entitlement to repayment under the FACA. In a footnote, the Board acknowledged that "because the bills were not properly remitted, [Employers] did not have an opportunity to challenge the reasonableness and necessity of Claimant's treatment through the utilization review

---

[8] The Board acknowledged Claimant's counsel's admission that some of DHS's payments on Claimant's behalf were not for treatment related to Claimant's work injuries and declared that Employers were liable to reimburse DHS only for treatment directly related to Claimant's work injury. *See* Bd. Op. at 7-8.

4

process[,]" but declared: "[B]ecause the bills have already been paid by DHS, that opportunity does not exist in this situation." Bd. Dec. at 7 n.8. Employers appealed to this Court.[9]

This case presents an issue of first impression. Employers argue that the Board erred by concluding that Employers are obligated to reimburse DHS's Lien despite that Claimant's claim is compensable and the medical service providers never submitted the required billing forms and medical reports to Employers as required for payment under the Act and the MCCR. Employers specifically assert that, unless and until they receive the documentation that triggers their statutory obligation to pay the bills subsumed in the DHS Lien, such obligation is not yet fixed. Employers correspondingly contend that the Board erred by determining that the FACA and DHS's Regulations supersede their rights under the Act.

Claimant responds that the Board correctly ordered Employers to pay the DHS Lien pursuant to the FACA. He further maintains that Employers may not avail themselves of the Act's and the MCCR's documentation and utilization review provisions where the DHS Lien accrued because of Claimant's work injury-related medical treatments for which Employers are liable and the Act's documentation requirements and utilization review provisions apply only to *providers* (not lien

---

[9] Dura-Bond and PI&I filed separate appeals to this Court. By October 26, 2023 Order, this Court consolidated the appeals. Thereafter, Dura-Bond and PI&I filed separate applications for supersedeas. Claimant filed an omnibus answer in opposition thereto. By April 8, 2024 Memorandum and Order, this Court denied Employers' supersedeas applications on the basis that they failed to establish they would suffer irreparable harm if this Court denied supersedeas.

"[This Court's] review determines whether there has been a violation of constitutional rights, whether errors of law have been committed, whether [B]oard procedures were violated, or whether necessary findings of fact are supported by substantial evidence." *Bryn Mawr Landscaping Co. v. Workers' Comp. Appeal Bd. (Cruz-Tenorio)*, 219 A.3d 1244, 1252 n.5 (Pa. Cmwlth. 2019). "This appeal requires us to interpret statutory provisions and thus it presents a pure question of law over which our standard of review is de novo and our scope of review is plenary." *City of Phila. Fire Dep't v. Workers' Comp. Appeal Bd. (Sladek)*, 195 A.3d 197, 207 (Pa. 2018).

holders). Claimant maintains that the Act and the MCCR cannot serve as a bar to the valid DHS Lien under the FACA.

Section 306(f.1)(1)(i) of the Act, 77 P.S. § 531(1)(i), obligates employers to pay an injured worker's reasonable and necessary medical expenses causally related to treatment for a compensable work injury. *See also CVA, Inc. v. Workers' Comp. Appeal Bd. (Riley)*, 29 A.3d 1224 (Pa. Cmwlth. 2011). To that end, Section 306(f.1)(5) of the Act declares, in pertinent part: "The employer or insurer **shall make payment and providers shall submit bills and records in accordance with the provisions of this section**." 77 P.S. § 531(5) (emphasis added); *see also* Sections 127.201 and 127.202 of the MCCR, 34 Pa. Code §§ 127.201, 127.202. Pursuant to Section 306(f.1)(2) of the Act, **if** a provider's **medical reports are not submitted within 10 days after treatments** (**or at least monthly**), **the employer is not required to pay for the treatments until such reports are filed**. *See* 77 P.S. § 531(2); *see also* Section 127.203 of the MCCR, 34 Pa. Code § 127.203. Section 306(f.1)(5) of the Act further requires that employers **shall pay providers within 30 days** of receiving bills and related records, **unless the employer or insurer disputes the reasonableness or necessity of the treatment**. *See also* Sections 127.208 and 127.404 of the MCCR, 34 Pa. Code §§ 127.208, 127.404.

The United States (U.S.) Supreme Court has explained:

> Under Pennsylvania law, an employee is not entitled to payment for *all* medical treatment once the employer's initial liability is established . . . . Instead, **the law expressly limits an employee's entitlement to "reasonable" and "necessary" medical treatment, and requires that disputes over the reasonableness and necessity of particular treatment must be resolved *before* an employer's obligation to pay** - and an employee's entitlement to benefits - **arise**[**s**]. *See* 77 [P.S.] § 531(1)(i) . . . .

6

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 60 (1999) (bold emphasis added). Therefore, although the compensability of Claimant's work injury has been established, making Employers at all times *liable for* paying medical bills causally related thereto,[10] Employers' obligation *to pay* providers for particular medical treatments is not triggered until they receive and have the opportunity to review related medical reports and they determine that the treatments are causally related and reasonable and necessary.

This Court also acknowledges that because Sections 1396a(a)(25) and 1396k of Title XIX of the Social Security Act, known as the Medicaid Act, 42 U.S.C. §§ 1396a(a)(25), 1396k, and DHS's Regulations, 42 C.F.R. §§ 433.135-433.154, "prohibit[] Medicaid from being the *primary* insurance when a third party (including private health insurance) is legally liable for the costs of the injured party's medical expenses[,]" "[a]s a condition for receipt of continued federal funding, D[HS] must vigorously seek reimbursement from third parties liable for causing injuries to Medicaid recipients." *Miller v. Lankenau Hosp.*, 618 A.2d 1197, 1198 (Pa. Cmwlth. 1992). "To effectuate [DHS's] responsibilities under federal law, our General Assembly adopted . . . [the FACA], the provisions of which authorize [DHS] to take various actions to obtain reimbursement of Medicaid payments." *Jordan ex rel. Jordan v. W. Pa. Hosp.*, 961 A.2d 220, 223-24 (Pa. Cmwlth. 2008).

Section 1409(a)(1) of the FACA declares: "No person having private health care coverage shall be entitled to receive the same health care furnished or

---

[10] An employer/insurer is obligated to pay an injured claimant's work injury-related medical bills until they are either found unreasonable or unnecessary, *see Wertz v. Workmen's Comp. Appeal Bd. (Dep't of Corr.)*, 683 A.2d 1287 (Pa. Cmwlth. 1996), or until a WCJ terminates the WC benefits. *See Twyman v. Workers' Comp. Appeal Bd. (Pa. Dep't of Transp.)*, 720 A.2d 780 (Pa. Cmwlth. 1998). Because neither of those circumstances occurred in this case, Employers remain liable to pay all medical bills related to Claimant's work-related injury.

paid for by a publicly funded health care program." 62 P.S. § 1409(a)(1). Section 1409(a)(2) of the FACA provides:

> If such a person receives health care furnished or paid for by a publicly funded health care program, the insurer of his private health care coverage shall reimburse the publicly funded health care program[] the cost incurred in rendering such care to the extent of the benefits provided under the terms of the policy for the services rendered.

62 P.S. § 1409(a)(2).

> Section 1409(b)(1) of the FACA specifically authorizes:

> When benefits are provided . . . to a beneficiary under this section because of an injury . . . for which an insurer is liable in accordance with the provisions of any policy of insurance issued pursuant to Pennsylvania insurance laws and related statutes[,] [DHS] shall have the right to recover from such person or insurer the reasonable value of benefits so provided.

62 P.S. § 1409(b)(1). This Court has explained:

> When the Commonwealth distributes funding to eligible persons for services covered by the Medicaid Act, the state bears the responsibility to seek recovery of funds paid to such individuals when they are successful in lawsuits against third parties. . . . [T]he Commonwealth must "take all reasonable measures to ascertain the liability of third parties" and must "seek reimbursement to the extent of such legal liability." [Section 1396a(a)(25)(A)-(B) of the Medicaid Act,] 42 U.S.C. § 1396a(a)(25)(A)[-](B).

*Jordan*, 961 A.2d at 223; *see also* Section 178.6(a) of DHS's Regulations, 55 Pa. Code § 178.6(a) (because "[DHS] is the payer of last resort[,]" DHS shall identify and use the third-party liability sources "to the fullest extent possible before payment is made" by DHS).[11] Third-party liability sources include employers/WC insurers.

---

[11] Employers also argue that, by failing to pursue the DHS Lien with reasonable diligence and/or determining whether Claimant's bills should be paid in the first place, DHS forfeited its

*See* Section 178.6(b)(6) of DHS's Regulations, 55 Pa. Code § 178.6(b)(6). To fulfill its statutory obligation, Section 1409(b) of the FACA authorizes DHS to seek reimbursement of expended public funds from employers/WC insurers in the form of a lien.[12] *See* 62 P.S. § 1409(b). Thus, federal and state law mandate that DHS

rights under the FACA. Claimant responds that because equity arguments are prohibited in the context of WC claims and, likewise, do not apply to DHS's enforcement of its statutory liens, Employers' equity arguments lack merit.

Unlike the first paragraph of Section 319 of the Act (pertaining to an employer's automatic subrogation interest in an injured employee's recovery against a third-party tortfeasor to which equity does not apply, *see Young v. Workers' Comp. Appeal Bd. (Chubb Corp.)*, 88 A.3d 295 (Pa. Cmwlth. 2014)),

> the second paragraph of Section 319 [of the Act] contemplates subrogation established either by contract (agreed to by the parties) or by litigation (established at the time of the hearing). It is neither automatic nor absolute. Indeed, subrogation under the second paragraph of Section 319 [of the Act] is not self-executing and must be asserted with reasonable diligence. [*See*] *Baierl Chevrolet v. Workmen's Comp*[.] *Appeal Bd. (Schubert)*, . . . 613 A.2d 132 ([Pa. Cmwlth.] 1992); *Humphrey v. Workmen's Comp*[.] *Appeal Bd. (Supermarket Serv*[.]*)*, . . . 514 A.2d 246 ([Pa. Cmwlth.] 1986).

*Indep. Blue Cross v. Workers' Comp. Appeal Bd. (Frankford Hosp.)*, 820 A.2d 868, 872 (Pa. Cmwlth. 2003).

Although DHS does not seek to recover the DHS Lien pursuant to Section 319 of the Act, *see* n.13 *infra*, the Act's intention that the liable party pay for a claimant's work injury-related medical services remains clear. According to the WCJ's findings, even after being notified of Employers' liability in November 2016, and Employers' payment of a prior DHS lien, DHS did not seek payment from Employers relative to this DHS Lien to the fullest extent possible, or make itself the payer of last resort as Section 178.6(a) of DHS's Regulations requires. However, Section 1409(b)(1) of the FACA does not impose timing requirements upon DHS, other than that suits authorized by that section must be brought within seven years of the date the cause of action arises. *See* Section 1409(b)(4)(i), (ii) of the FACA, 62 P.S. § 1409(b)(4)(i) and (ii). Moreover, as the Board observed, regardless of the timing and who may or may not have clean hands in this instance, "the providers' erroneous submission of medical bills to DHS, rather than to [Employers] . . . , does not invalidate [the] DHS[] [L]ien for [DHS's] payment of those bills." Bd. Op. at 7. Employers at all times remain liable for all of Claimant's medical bills that are causally related to his work injury and are reasonable and necessary.

[12] Although Section 319 of the Act also contemplates employer payment of medical liens, the subrogation rights referenced therein do not apply here. The second paragraph of Section 319 of the Act provides:

9

recover monies it paid on Claimant's behalf, thereby making Employers and their insurers ultimately responsible for reimbursing DHS.

Without supporting authority, the Board essentially interpreted that the FACA supersedes the Act[13] and declared that since DHS already paid Claimant's providers, Employers cannot now challenge causality or reasonableness or necessity of the medical services for which DHS paid. *See* Board Op. at 7 n.8. However,

> [s]tatutes which are applicable to the same persons or things or the same class of persons or things are considered to be *in pari materia*, and, as such, should be read together where reasonably possible. The concept has long been recognized in our decisional law, *see Commonwealth v. Trunk*, . . . 182 A. 540, 541 ([Pa.] 1936), and it is codified in the Statutory Construction Act [of 1972], *see* 1 Pa.C.S. § 1932(a) ("Statutes or parts of statutes are *in pari materia* when they relate to the same persons or things or to the same class of persons or things.").

---

> Where an employe has received payments for the disability or medical expense resulting from an injury in the course of his employment paid by the employer or an insurance company on the basis that the injury and disability were not compensable under this [A]ct in the event of an agreement or award for that injury the employer or insurance company who made the payments shall be subrogated out of the agreement or award to the amount so paid, if the right to subrogation is agreed to by the parties or is established at the time of hearing before the [WCJ] or the [B]oard.

77 P.S. § 671. The specific language of Section 319 of the Act makes clear that the subrogation right to which it refers arises when an employer/insurer pays a claimant's WC benefits pending litigation and litigation ultimately determines that "the injury and disability were not compensable under th[e] [A]ct[.]" *Id*. Under such circumstances, the employer/insurer must be repaid. Section 319 of the Act clearly applies to employer/insurer payments made while a claim is still in the process of being contested. Here, however, Claimant's claim was no longer being contested. Claimant's claim had long since been adjudicated to be compensable, with Employers responsible for the payments - payments they have made and agree to continue making if and when, pursuant to the Act and the MCCR, they can review whether each payment is causally related to Claimant's work injury and is reasonable and necessary.

[13] Although Claimant also argues that the Act and the MCCR cannot serve as a bar to a valid DHS lien, Claimant does not argue or cite to any legal authority that would support a conclusion that the FACA supersedes the Act.

10

*Commonwealth v. Gamby*, 283 A.3d 298, 311 (Pa. 2022). In the absence of legal authority to support that the FACA supersedes the Act, this Court must give effect to both. *See id.*

Based on this Court's review, the Act and the FACA can reasonably be read together to give effect to both, such that the Act does not bar a valid DHS lien under the FACA but, rather, specifies *when* an employer/insurer must pay it. Section 1409 of the FACA clearly makes an employer's/insurer's legal liability a condition precedent to paying a DHS lien, and limits DHS's ability to recover a DHS lien to the employer's/insurer's legal liability to pay the bills in the first instance. *See* 62 P.S. § 1409(a)(2) (Private insurers "shall reimburse [DHS] the cost incurred . . . **to the extent of the benefits provided under the terms of the policy for the services rendered**." (Emphasis added.)); *see also* 62 P.S. § 1409(b)(1) ("[DHS] shall have the right to recover from such person or insurer **the reasonable value of benefits so provided**." (Emphasis added.)); *Jordan*, 961 A.2d at 223 ("[T]he Commonwealth must "seek reimbursement **to the extent of such legal liability**." (Emphasis added.)). Under Section 306(f.1) of the Act and the related MCCR, an employer's/insurer's **legal liability to pay** for a claimant's medical treatments **is triggered only when the employer/insurer receives the proper billing forms and related medical records**.[14] Reading the FACA and the Act together, an

---

[14] Dura-Bond, joined by PI&I, aptly illustrates:

> This situation is no different than DHS pursuing payment in [the] context of litigation of a civil claim or contested [WC] matter. In those instances, DHS asserts its lien and must await a determination of liability or compensability. If a civil claim is litigated and there is found to be no liability, DHS cannot collect its lien because there is no liability from which it can collect. Similarly, in [WC], if a claim or treatment is determined to not be compensable, DHS cannot receive reimbursement. DHS'[s] right to reimbursement is predicated on the liability of another party to pay for the treatment.

employer/insurer is responsible for reimbursing a DHS lien, but only when it receives the proper billing forms and related medical reports. Traditional canons of statutory interpretation and sound public policy as expressed in both the FACA and the Act support interpreting the Act and the FACA in that manner.

Here, the parties do not dispute, and the WCJ made findings based on substantial record evidence, that Claimant's providers circumvented Section 306(f.1) of the Act and DHS paid the providers' bills despite the WCJ's 2016 determination and February 21, 2021 letter declaring that Employers are responsible for paying them, and Employers' payment of the prior DHS lien. *See* WCJ Findings of Fact (FOF) 8, 15, 18. The WCJ also found that, although DHS presented the DHS Lien to Employers, since neither DHS nor Claimant's providers have offered Employers the statutorily-mandated billing forms and medical reports, Employers have not had the opportunity to review, reprice, deny, and/or seek utilization review of those bills. *See* FOFs 8, 16-17. Rather than holding that Employers "are not responsible for payment of the DHS [L]ien[,]" Bd. Op. at 6, as the Board interpreted, the WCJ concluded that Employers "are not obligated to reimburse the [DHS L]ien . . . **unless and until the bills in question are submitted to them** for review, payment, denial[,] and/or [u]tilization [r]eview in accordance with the . . . Act." WCJ Dec. at 8 (emphasis added). The WCJ added that "[t]he providers should directly bill [Employers] for the treatment and address any overpayments by DHS directly with [DHS]." FOF 18. The WCJ's decision properly gave effect to both the FACA and the Act - with the result being that when the providers submit the

> Where there is no liability, there can be no reimbursement to DHS. Because [Employers have] not received the medical bills and records, and because [they have] not had the opportunity to challenge reasonableness and necessity, liability for the underlying treatment is not established.

Dura-Bond Br. at 32-33.

12

documentation to Employers pursuant to Section 306(f.1) of the Act that support DHS's payments, Employers shall pay Claimant's work injury-related portions of the DHS Lien pursuant to Section 1409 of the FACA.

Despite the Board's agreement that Claimant's providers did not submit his medical bills in accordance with the Act, and that the Board limited Employers' reimbursements to DHS to "only [] those payments that were related to treatment for Claimant's work injury[,]" Bd. Op. at 8, the Board nevertheless declared that Employers lost the opportunity to challenge the reasonableness or necessity thereof through the utilization review process because DHS has already paid the providers' bills. *See* Bd. Op. at 7 n.8. The Board's holding not only disregarded Section 306(f.1) of the Act by making Employers responsible for paying the DHS Lien sight unseen, but it begs the question how Employers can confirm that the DHS Lien includes only treatments related to Claimant's work injury without supporting bills and medical records. Moreover, the Board's interpretation signals to providers that all they have to do to avoid the paperwork and a potentially disruptive utilization review process is to circumvent a Medicaid recipient's employer/insurer and bill DHS for immediate payment. Such process would make employers/insurers strictly liable for a claimant's medical treatment, which is clearly contrary to Section 306(f.1) of the Act. Accordingly, this Court holds that the Board erred by concluding that Employers are obligated to reimburse the DHS Lien pursuant to Section 1409 of the FACA in the absence of the billing forms and medical reports required as a condition precedent to payment under the Act and the MCCR.

The Act clearly places the onus on Claimant and his providers to produce proper billing forms and related medical reports to Employers once a work injury is deemed compensable, regardless of whether Claimant is a Medicaid recipient. For whatever reason, Claimant did not take steps after the WCJ's November 1, 2016 ruling - Employers' satisfaction of the previous DHS lien, and

13

their subsequent conversations with, and a February 21, 2021 letter to, Claimant's counsel - to ensure that Claimant's providers billed Employers. To this day, Employers stand ready to pay Claimant's medical bills that are properly submitted and documented by the providers pursuant to Section 306(f.1) of the Act and Section 1409 of the FACA. The difficulty with this situation is in determining how the parties should correct it.

Employers' obligation to pay for Claimant's work injury-related medical treatments and, thus, those costs in the DHS Lien, is not triggered until Employers receive proper billing reports and medical records from the treatment providers to confirm causality and the reasonableness and necessity for Claimant's underlying treatments. DHS has paid Claimant's providers for all his medical treatments, notwithstanding whether they were for his work injury. Having been paid, the providers now have no incentive to submit proper billing and medical reports to Employers. Moreover, DHS is not a party to, and has not participated in, this litigation.

Ideally, the parties would work with DHS to determine which payments underlying the DHS Lien are likely compensable, Claimant would obtain the billing reports and related medical records from the providers or have providers send them to Employers, Employers would review, reprice, deny, and/or seek utilization review of those bills and, thereafter, reimburse the DHS Lien only for those treatments causally related to Claimant's work injury and reasonable and necessary therefor. In the alternative, the parties could reach another mutually agreeable solution that satisfies both Section 306(f.1) of the Act and Section 1409 of the FACA. Accordingly, this Court remands this matter to the Board to remand to the WCJ for the WCJ and/or the parties to determine the best way to satisfy both Section 306(f.1) of the Act and Section 1409 of the FACA under the circumstances presented here and to undertake those measures.

14

Based on the foregoing, this Court reverses the Board's order and remands this matter for further proceedings consistent with this Opinion.[15]

_____
ANNE E. COVEY, Judge

---

[15] In light of this Court's disposition, this Court need not address whether the Board violated Employers' due process rights.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Dura-Bond Coating, Inc., | : | CASES CONSOLIDATED |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Ryan Marshall and PI&I Motor | : | |
| Express (Workers' Compensation | : | |
| Appeal Board), | : | No. 1123 C.D. 2023 |
| Respondents | : | |
| | : | |
| PI&I Motor Express, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Ryan Marshall and Dura-Bond | : | |
| Coating, Inc. (Workers' | : | |
| Compensation Appeal Board), | : | No. 1137 C.D. 2023 |
| Respondents | : | |

O R D E R

AND NOW, this 18th day of November, 2024, the Workers' Compensation Appeal Board's (Board) September 12, 2023 order is REVERSED, and the matter is REMANDED to the Board with instructions that it remand the matter to the Workers' Compensation Judge for further proceedings consistent with this Opinion.

Jurisdiction is relinquished.

 

_____
ANNE E. COVEY, Judge